# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT KNOXVILLE

LILLIAN D. VEGA-HORTA, ET AL,    )
           )
    Plaintiffs/Appellants,   )  **Knox Circuit No. 1-86-96**
           )
VS.         )  **Appeal No. 03A01-9706-CV-00226**
           )
WYETH-AYERST LABORATORIES  )
COMPANY, ET AL,    )
           )
    Defendants/Appellees.   )

APPEAL FROM THE CIRCUIT COURT OF KNOX COUNTY
AT KNOXVILLE, TENNESSEE
THE HONORABLE DALE C. WORKMAN, JUDGE

**J. D. LEE**
**LEE, LEE & LEE**
Knoxville, Tennessee
Attorney for Appellants

**EDWARD G. WHITE, II**
**HODGES, DOUGHTY & CARSON, PLLC**
Knoxville, Tennessee
Attorney for Appellees

**AFFIRMED**

                           **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**WILLIAM H. WILLIAMS, Sr. J.**

Plaintiff, Lillian Vega-Horta ("plaintiff"), appeals the judgment of the trial court

granting defendant's, St. Mary's Medical Center ("St. Mary's") Motion for Summary Judgment. For reasons state hereinafter, we affirm the trial court's judgment.

On February 12, 1995, plaintiff's decedent husband, Catalino Soriano, was transported to the emergency room at St. Mary's with complaints of severe abdominal pain. He was admitted at approximately 7:50 a.m. under the care of the emergency room physician, Dr. Marjorie Barron. Dr. Barron examined Soriano and ordered that lab work, x-rays, and an abdominal ultrasound be performed on him. Dr. Barron did not issue a definitive diagnosis of the cause of Soriano's abdominal discomfort; instead, she entered under "Diagnosis" on the chart, "Acute Abd. Pain; R/O PUD; R/O gastritis."

While in the emergency room, Soriano had three episodes of vomiting, the last of which contained blood in the vomitus. Dr. Barron prescribed 12.5 mg of phenergan to be administered to Soriano intravenously once at 8:16 a.m. and then again at 8:25 a.m. At 2:30, Soriano was admitted to a room under the care of co-defendant, Dr. William Bolin. Dr. Bolin started Soriano on IV fluids and an EKG was performed. Soriano had one additional vomiting episode at approximately 2:30 p.m. Upon being called by a nurse, Dr. Bolin gave orders for Demerol 25 mg and Phenergan 12.5 mg to be administered to Soriano intramuscularly for pain.

By 3:00 p.m., Soriano was resting and at 6:20 p.m. his symptoms had subsided enough that he was feeling better. However, when a nurse came in to pick up his food tray at approximately 6:40 p.m., she found Soriano in bed, non-responsive. An effort was made to resuscitate Soriano, but these efforts were futile. Soriano was pronounced dead at 7:02 p.m.

An autopsy was performed to ascertain Soriano's cause of death. It was determined that he died from hemopericardium secondary to acute aortic dissection as a result of cystic medial necrosis.

2

This lawsuit was filed on February 12, 1996, naming St. Mary's, Dr. Barron, and Dr. Bolin as defendants. Plaintiff alleges that had timely diagnosis been made of the acute aortic dissection, the treatment of choice would have been immediate surgical intervention and such would have prevented Soriano's death. Plaintiff further alleges that Drs. Barron and Bolin and the medical and hospital personnel at St. Mary's failed to act with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice in their care of Soriano and that their departures from these required standards of professional practice were a proximate cause of Soriano's death. Subsequently, St. Mary's filed a Motion for Summary Judgment claiming that its agents acted within the recognized standards of acceptable professional practice for hospitals in Knoxville and similar communities. Said motion also stated that co-defendants, Drs. Barron and Bolin, were not employed by or otherwise acting under the supervision, direction or control of St. Mary's in the exercise of their respective independent medical judgment, but rather were independent, private practicing physicians enjoying medical staff privileges at St. Mary's consistent with their respective medical specialties. The affidavits of Dr. Leon Bogartz and Terry King, R.N. were filed in support of the Motion.

The affidavit of Dr. Bogartz is as follows:

STATE OF TENNESSEE

COUNTY OF KNOX

After being duly sworn, according to law, the undersigned states as follows:

1. I, Dr. Leon Bogartz, am employed as the Medical Director at St. Mary's Medical Center, Inc., (hereinafter referred to as "St. Mary's"). This affidavit is provided in support of a Motion for Summary Judgment that is being simultaneously filed on behalf of St. Mary's in the above captioned matter.

2. In my capacity as Medical Director at St. Mary's, I am familiar with and informed about the status of Marjorie Barron, M.D. and William R. Bolin, M.D., who have been named as Co-Defendants in the captioned matter.

3. The Co-Defendants, Marjorie B. Barron, M.D. and William R. Bolin, M.D., were not at any time material to the case at bar employed by St. Mary's Medical Center. Rather, at all times material to this case, Dr. Barron and Dr. Bolin were private practitioners duly licensed by the state of Tennessee, with Dr. Barron specializing and board certified in emergency medicine and Dr. Bolin specializing and board certified in internal

3

medicine. Dr. Barron was granted staff privileges at St. Mary's effective June 30, 1986, and Dr. Bolin was granted staff privileges at St. Mary's effective July 22, 1993. At all times material to this case, Dr. Barron and Dr. Bolin possessed staff privileges consistent with their professional training, experience and specialties and neither were employees of St. Mary's. Dr. Barron and Dr. Bolin were not subject to the supervision, direction or control of St. Mary's with respect to the exercise of their independent professional judgment in the diagnosis, care and treatment they provided to Catalino Soriano in February, 1995, but rather were subject to only such rules and regulations as were applicable to other private practicing licensed doctors enjoying staff privileges and practicing at St. Mary's.

4. The Co-Defendants, Dr. Barron and Dr. Bolin, were not at any time material to the case at bar, employed by or acting as the agent or servant of St. Mary's in any regard or in any capacity whatsoever.

5. This affidavit is made upon my personal knowledge.

The affidavit of Terry King, B.S.N., M.B.A. provides in pertinent part:

After being duly sworn, according to law, the undersigned states as follows:

2. I am familiar with the recognized standards of acceptable professional practice for nursing and hospital care in Knoxville, Tennessee, or similar communities at the times material to this case. I have been licensed by the state of Tennessee as a registered nurse since 1984. Since 1984, I have practiced nursing in Knoxville, Tennessee. My practice experience has included work at the Step Down Cardiac Unit at the University of Tennessee Medical Center for four years working as a staff nurse. For the past eight years, I have been employed by St. Mary's Health Systems as a nurse manager of the surgical and GI Unit. I am presently the clinical leader for the Laboratory and Emergency Department for St. Mary's Health System. I was engaged in the practice of nursing, as noted above, with in [sic] the year preceding the acts which form the basis for this lawsuit. I am familiar with the recognized standards of acceptable professional practice for nursing and hospital care in Knoxville, Tennessee or similar communities at the times material to this case.

3. I have reviewed pertinent documents pertaining to this case, specifically including the following:

a. Copies of the Complaint filed in this matter on behalf of the Plaintiffs and the Answer filed on behalf of St. Mary's Medical Center, Inc.;

b. Medical records of St. Mary's Medical Center, Inc. for Catalino Soriano's admission on February 12, 1995.

5. Based upon the information I have reviewed as outlined in paragraph 3 above, it is my professional opinion, within a reasonable degree of medical certainty, that the nursing and hospital care that Catalino Soriano received from St. Mary's was at all times and in all respects conducted in a reasonable and appropriate fashion by hospital personnel. . . [i]t is further my professional opinion, within a reasonable degree of certainty, that the hospital personnel did not deviate from the recognized standards of

4

acceptable professional practice, nor did they in any way cause Mr. Catalino's demise as a result of any improper care.

6. In conclusion, it is my professional opinion, with a reasonable degree of medical certainty, that the hospital and nursing care that Catalino Soriano received from St. Mary's, at times material to this case, was performed in all respects in conformance with the recognized standards of acceptable professional practice for a hospital such as St. Mary's, in Knoxville, Tennessee, or similar communities. It is further my professional opinion, with a reasonable degree of medical certainty, that St. Mary's personnel did not deviate from the recognized standards of acceptable professional practice in their care of Catalino Soriano.

7. This Affidavit is made upon my personal knowledge.

In opposition to the Motion for Summary Judgment, plaintiff filed the affidavit and the discovery and evidentiary deposition of Robert E. Pieroni, M.D., an Alabama licensed physician practicing his specialty of internal medicine there.

Dr. Pieroni's affidavit states that he is a physician practicing the specialty of internal medicine at the pertinent times and is familiar with the recognized standard of acceptable professional practice in the field internal medicine and family practice as they existed in Knoxville, Tennessee, in February of 1995. Dr. Pieroni's affidavit stated in pertinent part:

6. Additionally, the patient's past history of chest pain was not promptly addressed or considered. Spanish is the second most common language in this country and a Spanish interpreter was available at St. Mary's Medical Center. Neither physician nor the hospital staff elicited the patient's past history of chest pain on a timely basis as should and could have been done early on admission.

9. I am of the opinion, with a reasonable degree of medical certainty, that Marjorie B. Barron, M.D., William R. Bolin, M.D., and agents of St. Mary's Medical Center acted with less than or failed to act with ordinary and reasonable care in accordance with such standard in their care of Catalino Soriano in (a) failing to obtain proper and prompt historical data; (b) failing to obtain proper and prompt physical evaluation; (c) failing to obtain proper and prompt diagnostic studies, including a stat echocardiogram and other appropriate tests; (d) failing to obtain immediate consultation; (e) in prescribing medications that masked the patient's symptoms without their underlying etiology having been appropriately and properly addressed; and further, that such departures from the recognized standard of acceptable professional practice caused a different outcome and were a proximate cause of Catalino Soriano's death on February 12, 1995.

On March 21, 1997, after hearing argument concerning this motion, the trial court granted St. Mary's Motion for Summary Judgment. Pursuant to Tenn. R. Civ. P. 54.02, St.

Mary's was dismissed from the lawsuit and the judgment was entered as final. Plaintiff filed her notice of appeal thereafter on April 21, 1997.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material facts and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. Ct. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id.* at 210-211. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original). The phrase "genuine issue" as stated in Rule 56.03 refers to genuine factual issues, and does not include issues involving legal conclusions to be drawn from the facts. Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80). We must decide whether the legal conclusions on which the trial court's grant of summary judgment was based are correct. Our review is *de novo* on the record with no presumption of the correctness of the trial court's conclusions of law. *Union Planters National Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993).

With these principles in mind, we first look at the plaintiff's burden in a medical malpractice case as set forth in T.C.A. § 29-26-115:

29-26-115.  Claimant's burden in malpractice action--Expert testimony--Presumption of negligence--Jury instructions--(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not have otherwise occurred.

(B) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.  This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses.  The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

T.C.A. § 29-26-115 (a)-(b) (1980).

In order for the affidavit of an individual to create an issue of fact with respect to the standard of care and the breach thereof, it must be shown that Dr. Pieroni is competent to testify to the matters stated in his affidavit.  Tenn. R. Civ. P. 56.06.  Tenn. R. Civ. P. 56.06 (formerly codified as 56.05) provides in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show *affirmatively* that the affiant is competent to testify to the matters state therein. . .

Tenn. R. Civ. P. 56.06 (emphasis added).[1]  In this case, the court had before it the affidavit of Terry King, a registered nurse with over twelve years nursing experience within various

[1]We find it interesting to note that plaintiff, after St. Mary's brought its Motion for Summary Judgment, sought and was granted a continuance in this matter in order to obtain further discovery materials. Within this several months of continuance, plaintiff proffered only the affidavit of Dr. Pieroni to overcome said Motion for Summary Judgment.  Even after many months of continuance, plaintiff did not produce an expert in the area of nursing and hospital care but only managed to procure the affidavit of Dr. Pieroni, an internist and family practitioner in private practice in Tuscaloosa, Alabama.

7

hospital departments in Knoxville, Tennessee, eight years of which have been in a managerial capacity. The trial court, undoubtedly, found Terry King competent to speak as an expert in nursing and hospital care. As required by Tenn. R. Civ. P. 56.06, King affirmatively testified to such competency: "I am familiar with the recognized standards of acceptable professional practice for nursing and hospital care in Knoxville, Tennessee, or similar communities at the times material to this case." Dr. Pieroni's affidavit testimony, on the other hand, merely testified: "I am familiar with the recognized standard of acceptable professional practice pertaining to the practice of internal medicine and family practice as they existed in Knoxville, Tennessee, in February of 1995." Noticeably absent from Dr. Pieroni's affidavit testimony was the affirmative showing that he is qualified to testify as to the recognized standard of professional care as it would apply to nursing or hospital care as required by Tenn. R. Civ. P. 56.06. As such, plaintiff has failed in her burden of creating issues of material fact concerning not only the recognized standard of acceptable professional practice in the profession of nursing and hospital care, but plaintiff has also failed to carry her burden of proving that St. Mary's personnel acted with less than or failed to act with ordinary and reasonable care in accordance with such standard as required by T.C.A. § 29-26-115 (a) (1)-(2).

The trial court has broad discretion in dealing with the qualifications and admissions of testimony of expert witnesses. *Ayers v. Rutherford Hospital, Inc.*, 689 S.W.2d 155 (Tenn. Ct. App. 1984).

Clearly, the trial court considered the affidavit of Dr. Pieroni and found that such affidavit does not state that he is familiar with the recognized standard of acceptable care of practicing nurses and hospital care personnel in Knoxville, Tennessee, or similar communities. As such, the trial court, undoubtedly, determined that such affidavit was not sufficient under Tenn. R. Civ. P. 56.06 (formerly 56.05) and relevant case law to create a genuine issue of material fact in order to necessitate a trial. We agree.

Under the foregoing circumstances, we find no error in the trial court's judgment.

8

The trial court did not abuse its discretion in granting St. Mary's Motion for Summary Judgment as the affidavit of Dr. Pieroni is insufficient to create the required issue of fact as to the defendant hospital.

Accordingly, the order of the trial court is affirmed. Costs of this appeal are assessed against plaintiff, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
WILLIAMS, Sr. J.

9