# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| **MARYBETH HOGAN,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Madison Chancery No. 49665 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9905-CH-00119 |
| **GEORGE LAWSON YARBRO,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:

Joy Tanner Bomar
Memphis, Tennessee

For the Defendant/Appellee:

Stephen M. Milam
Lexington, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a post-divorce action. The mother filed a petition to enforce the provisions of the marital dissolution agreement. The agreement provided for payment of attorney's fees and costs for legal action to enforce the marital dissolution agreement. The trial court denied the mother's request for attorney's fees and costs. We reverse and remand.

Marybeth Hogan ("Mother") and George Lawson Yarbro, M.D. ("Father") divorced on June 30, 1995, after ten years of marriage. Father was a physician with The Jackson Clinic ("Clinic"). The divorce decree incorporated in its entirety a marital dissolution agreement ("MDA" or "agreement") entered into on June 14, 1995. In the MDA, the parties agreed *inter alia* that Mother would have sole custody of the parties' son and daughter, with Father entitled to liberal visitation; that Father would pay $3,582.50 per month in child support; that Father would pay $3,582.50 per month for seven years as rehabilitative alimony; that Father would pay Mother's graduate school tuition, books, and related costs, as further rehabilitative alimony; and that Father would provide each child with transportation and automobile insurance, beginning as he or she reached 16 years of age. The agreement also contained an enforcement provision:

> **Enforcement of Agreement/Attorney's Fees and Costs.** In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, the parties agree that the successful party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

On July 8, 1997, Mother filed a petition seeking modification of the divorce decree, a citation for contempt, and temporary injunctive relief. She alleged that Father had repeatedly told their son, Reid, that he wanted nothing to do with him, and that because of Father's behavior, neither child wanted to visit Father. She also alleged that Father had failed to make the required child support and rehabilitative alimony payments. She asked that the trial court find Father in contempt, order a garnishment of his wages from the Clinic to cover his monthly child support and alimony obligations, suspend his visitation privileges with the children until he successfully completed counseling, and award

her attorney's fees.

On July 13, 1998, the trial court issued an order on Mother's petition. Because Father acknowledged that he was $9,175.36 in arrears in his payments to Mother, the trial court found that he was not in willful contempt regarding the arrearage. The trial court ordered Father and Mother to meet with a counselor, for co-parenting instruction and for the purposes of "re-establishing a relationship" between the children and Father "on whatever terms are appropriate for the children and the Father." The trial court also ordered the wage assignment requested by Mother. After considering Mother's request for over $9,000 in attorney's fees, the trial court awarded her $1500. Mother did not appeal this order, and it is not at issue in this appeal.

Several months later, on November 17, 1998, Mother filed another petition for contempt for Father's failure to make payments owed under the MDA. She asserted that the garnishment of Father's wages by the Clinic was insufficient to cover the monthly support owed her, resulting in a shortfall of $2,100 per month. She also asserted that Father had recently tendered a letter of resignation to the Clinic, and refused to tell her where he would be working in the future. In addition, Mother alleged that Father had failed to provide Reid a car, as required in the MDA. Mother asked the trial court to find Father in willful contempt of the divorce decree, and to order him to pay the amounts owed. She also asked that Father be required to provide her with information about his new employment, and that the trial court award her attorney's fees pursuant to the MDA.

After Mother filed this petition, but prior to the hearing on the petition, Father paid Mother the arrearage in child support and alimony.

The hearing on Mother's petition was held on December 14, 1998. Father testified that he was current on both his child support and rehabilitative alimony and that he had, at his lawyer's urging, made a $1500 payment towards the $3,739.65 purchase price of Reid's car. Father testified that he had not paid for the car at the outset because he had already bought Reid one car, which Reid had wrecked three times. Father's attorney argued that the terms of the MDA specified that Father and Reid decide together the make and model of the car, and that Reid had failed to consult Father about it.

In his testimony, Father admitted that he had not been current on his payments at the time Mother filed the contempt petition. He also conceded that he had not tried to talk to Reid about buying another car. Father acknowledged that he wanted no contact with Reid at that time, and that he had told the family therapist that he had decided not to have anything to do with Reid.

During the hearing, Mother's attorney indicated that Father responded to the contempt petition by denying that he had resigned from the Clinic. Mother's attorney then subpoenaed from the Clinic Father's letter of resignation. Father explained his denial that he had resigned by stating, "I told them I had not resigned as of yet, but I had turned in a letter of resignation, that's two different things." Mother's attorney questioned Father about his new employment, and Father responded by telling Mother's attorney that it was "none of [her] business." The trial judge instructed Father to answer. When Mother's attorney asked Father how his change in employment would affect his profit sharing/retirement plan from the Clinic, Father protested, saying "what does that have to do with this?" When Mother's attorney asked the trial court to again direct Father to answer the question, the trial judge instructed Father's attorney to take a five-minute recess to talk to his client, saying, "You need to talk to him, Mr. Milam. If I have to talk to him, he's not going to like it."

Father argued that Reid was required to consult him regarding the car, but admitted that he had not provided Mother or Reid his home address or telephone number. Father said they knew how to reach him at work, but admitted he would not talk to Mother at work and had told the counselor he wanted nothing to do with Reid.

At the conclusion of the hearing, Mother asked that she be awarded rehabilitative alimony through May 31, 1999 in a lump sum, so that she could be certain of having enough money to pay her spring semester graduate school tuition. Mother indicated that, because of past shortfalls created by the wage assignment and Father's failure to make up the difference, Mother had lacked funds to stay in school and had been forced to withdraw. Mother's attorney asked that Father be required to pay the balance for Reid's car, asked that Father be ruled in contempt, and requested attorney's fees. On January 25, 1999, the trial court issued an order on the petition for contempt. The trial court did not find

Father in contempt, but ordered him to make a lump sum payment of $23,470 to Mother to cover rehabilitative alimony owed through May 1999, to reimburse Mother $2,239.65 for the balance due on their son's car, and to make up promptly, by direct deposit to Mother's bank account, any future shortfalls in child support and alimony created by insufficient amounts garnered through the wage assignment.

Without elaborating on its reasoning, the trial court denied Mother's request for attorney's fees and ruled that each party pay his or her own fees. Mother now appeals the trial court's denial of her request for expenses, including reasonable attorney's fees.

On appeal, Mother argues that she is entitled to attorney's fees under the enforcement provision of the MDA, and that the trial court erred by failing to award them. In the alternative, she argues that even if the enforcement provision of the MDA is not given effect, the trial court had discretion to award fees under Tennessee Code Annotated § 36-5-103(c), which provides that a trial court may award reasonable fees incurred in enforcing a decree for alimony or child support, and that the trial court abused its discretion in declining to do so.

Father argues that the enforcement provision of the MDA was never triggered. He notes that, under the provision, fees are to be awarded only if it is "reasonably necessary . . . to institute legal proceedings to procure the enforcement" of the MDA. Father maintains that, because the trial court did not find him in willful contempt, it was not reasonably necessary for Mother to file the contempt petition in order to enforce the agreement. He asserts, therefore, that the decision to award or deny attorney's fees was entirely within the discretion of the trial court, and that the trial court did not abuse its discretion by decreeing that each party be responsible for his or her own fees.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. T.R.A.P. 13(d). There is no presumption of correctness of the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). The interpretation of a written agreement is a matter of law and not of fact; consequently, our review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. App. 1993).

In the absence of an agreement between the parties, the decision of whether to award attorney's fees in a divorce or post-divorce proceeding "is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)(citing *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. App. 1992) and *Crouch v. Crouch*, 385 S.W.2d 288, 293 (Tenn. App. 1964)). In this case, however, the parties' MDA contains a provision governing the payment of attorney's fees.

A marital dissolution agreement is a contract entered into by a husband and wife in contemplation of divorce. *Kensinger v. Conlee*, Nos. 02A01-9811-CV-00322, 141706, 1999 WL 553713, at * 4 (Tenn. App. July 30, 1999). If approved by the trial court, the MDA is incorporated into the decree of divorce, as it was in this case. *See* Tenn. Code Ann. § 36-4-103. At that point, statutory issues in the MDA, such as child support during minority and alimony *in futuro*, lose their contractual nature and become a judgment of the court. *Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993) (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)). The trial court has the power and discretion to modify terms contained in the MDA relating to these issues. *Archer v. Archer*, 907 S.W.2d 412, 418 (Tenn. App. 1995). On issues other than child support during minority and alimony *in futuro*, the MDA retains its contractual nature. *See Towner*, 858 S.W.2d at 888; *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975); *Penland*, 521 S.W.2d at 224. The *Blackburn* Court stated:

> An agreement between a husband and wife on matters outside the scope of the legal duty of child support during minority, or alimony in futuro over which the court also has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same manner as other contracts.

*Blackburn*, 526 S.W.2d at 465.

The enforcement provision in the MDA in this case relates to the award of attorney's fees and costs. Since it does not relate to child support during minority or alimony *in futuro*, this provision retains its contractual nature and is not subject to modification by the court. *See Towner*, 858 S.W.2d at 888. Under the enforcement provision of the parties' MDA, Mother is entitled to reasonable expenses, including attorney's fees, if it was "reasonably necessary . . . to institute legal proceedings to procure the enforcement of any provision" of the MDA.

The trial court denied Mother's request for attorney's fees, without elaborating on its reasoning. We assume that the trial court implicitly found that it was not "reasonably necessary" for Mother to institute legal proceedings to enforce the MDA. Father argues on appeal that the enforcement provision was not triggered because the trial court did not find Father in willful contempt. However, the MDA

provides for attorney's fees if it is "reasonably necessary . . . to institute legal proceedings," and a finding of contempt is not necessary under the language of the MDA.  Consequently, we must determine whether the evidence preponderates against the trial court's implicit finding that it was not "reasonably necessary" for Mother "to institute legal proceedings."

In this case, Mother had been forced to file a contempt petition for Father's failure to pay alimony and child support just four and a half months before the present proceeding. This resulted in a garnishment of Father's wages from his employer. The garnishment was apparently insufficient to cover all of Father's obligation. At the time Mother filed her second petition, the subject of this proceeding, Father was once again in arrears. When Father became aware of the shortfall, he took no steps to pay the arrearage, protesting that he "didn't know what to do. . . . " After Mother's petition for contempt was filed, however, Father apparently figured out what to do, because the arrearage was paid prior to the hearing on Mother's petition.

In response to Mother's contempt petition, Father denied having resigned from the Clinic, when he had in fact tendered his letter of resignation to the Clinic. Father's rather dissembling explanation was "I told them I had not resigned as of yet, but I had turned in a letter of resignation, that's two different things." Moreover, Father refused to tell Mother where he would be working in the future, so that Mother was not only suffering a monthly shortfall in payments owed her, but also was faced with the possibility that the existing wage garnishment from the Clinic would soon become worthless. Father refused to answer questions about his future employment and the effect on his profit sharing/retirement plan until ordered to do so by the trial judge.

In addition, Father failed to reimburse Mother for their son's car, despite her requests that he do so. Father protested that the MDA required Reid to consult with him regarding the make and model of the car, but admitted that he had not provided either Reid or Mother with his current address or telephone number, that he would not talk to Mother at his office, and that he had told the therapist who counseled Reid and him that he did not want anything to do with Reid at that time.

Based on this record, we must conclude that the evidence preponderates against the trial court's implicit finding that it was not reasonably necessary for Mother to institute legal proceedings. We find that it was reasonably necessary for Mother to institute legal proceedings to enforce the MDA. We remand the case to the trial court for a determination of Mother's reasonable attorney's fees for the November 17, 1998 contempt petition, as well as reasonable attorney's fees for this appeal.

The decision of the trial court as to denial of expenses, including attorney's fees, is reversed and the cause remanded for further proceedings consistent with this Opinion. Costs are taxed against the Appellee, for which execution may issue if necessary.

**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**ALAN E. HIGHERS, J.**