# JAMES P. BURNS, d/b/a CLIMATE CONTROL COMPANY, v. TEMPERATURE CONTROL COMPANY, INC., et al.—371 S. W. (2d) 804.

Eastern Section.  December 4, 1962.

Certiorari Denied by Supreme Court October 11, 1963.

Bryant, Brandt, & Price, Johnson City, for plaintiff in error.

Dan Laws, Jr., Elizabethton, Cecil Branstetter, Nashville, for defendant in error.

COOPER, J. This suit was brought to recover monies allegedly due for heating and air conditioning work performed by the plaintiff, James P. Burns, d/b/a Climate Control Company, in the construction of the Greene Valley Homes, a state mental institution located in Greeneville, Tennessee. The plaintiff also sought, in the same suit, a declaration of its rights and those of its employees (now defendants in error) under the Prevailing Wage Act (T.C.A. sec. 12-406 et seq.).

The State of Tennessee, through its Department of Mental Health, awarded the contract for the construction of the mental institution to the Trammell Construction Company. Trammell sub-contracted the plumbing, heating and air conditioning work to Paul Howard d/b/a Howard and Howard Plumbing and Heating Company. Howard, in turn, sub-contracted the heating and air conditioning work to the Temperature Control Company, Inc., and it sub-contracted the work to the plaintiff. The prime contract and the sub-contracts, in

accordance with the provisions of the Prevailing Wage Act, set forth minimum wages to be paid the various craftsmen that would be employed in constructing the Greene Valley Homes. The State Department of Labor, in checking conditions on the job site during the course of construction, determined that the plaintiff and Paul Howard had failed to classify and pay their employees according to the work they performed on the project and, consequently, refused to pay the prime contractor, Trammell Construction Company, for the work done by the plaintiff and by Howard. It followed that the prime contractor refused to pay the subcontractors, and they, in turn, refused to pay the plaintiff. Plaintiff then brought the present suit naming as defendants, the employees involved, certain key State officials, the prime contractor, and the sub-contractors through whom the plaintiff had been awarded his contract.

Four employees of the sub-contractor Paul Howard, d/b/a Howard and Howard Plumbing and Heating Company, filed intervening petitions insisting that they had been classified and paid as plumber's helpers, when, in fact, they had performed work as plumbers, and asked that they be awarded a judgment against Howard for the differential in the wages as set out in the construction contracts.

Necessary and proper answers were filed by the employees of the plaintiff and by the sub-contractor Paul Howard. A number of other pleadings were filed, but they are not material in that it developed in the course of the hearing that there was no dispute as to the contracts, the work done, or the amount due either the plaintiff or Paul Howard for the work performed. It further

developed that the claims of the employees of the plaintiff, if allowed, would not exceed $8,000.00, and the claims of the employees of Howard would not exceed $6,000.00. By agreement of all parties, the State of Tennessee paid $14,000.00 into the registry of the Court from monies owing in payment of the work performed by plaintiff and by Paul Howard to be disbursed to the plaintiff, the defendant Howard and/or their employees as their interest should be finally determined. This action reduced the issues to a determination of whether the employees of the two sub-contractors, the plaintiff and Howard, had been classified and paid in accordance with the classifications and wage scales prescribed by the contract between the State of Tennessee and the prime contractor and subcontractors.

The trial court, sitting without the intervention of a jury, found that the employees of Howard had been properly classified and paid, and dismissed their intervening petition.

The trial court further found that the plaintiff Burns had incorrectly classified his employees as laborers when, in fact, they did sheetmetal work. The trial judge awarded these employees judgments for the difference between the contractual pay for laborers and the contractual pay for sheetmetal workers.

Both the plaintiff and the employees of the subcontractor Paul Howard appealed. Howard's employees have since abandoned their appeal, so the only questions before this Court are the ones raised by the plaintiff Burns in his assignments of error.

In assignments I and II, plaintiff insists that the court erred in failing to find that he had the right to classify

his own employees in accordance with their experience, skill and ability. In support of the insistence, plaintiff contends that there is nothing in the contract, under which he performed the work for the State of Tennessee, or in the Prevailing Wage Act (T.C.A. sec. 12-406 et seq.) which limited the well-recognized and fundamental right of management to determine job duties of its employees.

In construing contracts, the Court must ascertain, if possible, the intention of the parties from the entire context of the agreement. Real Estate Management v. Giles, 41 Tenn. App. 347, 293 S. W. (2d) 596, Scott v. McReynolds, 36 Tenn. App. 289, 255 S. W. (2d) 401; Couch v. Couch, 35 Tenn. App. 464, 248 S. W. (2d) 327. And where an executed agreement refers to other documents and makes the conditions of the other documents part of the executed agreement, they will be interpreted together as the agreement of the parties. Somerville v. Gullett Gin Co., 137 Tenn. 509, 194 S. W. 576, 17A C.J.S. Contracts sec. 299, page 136, 12 Am.Jur., Contracts, Section 246.

The subcontract agreement between the plaintiff and the Temperature Control Inc., provided that:

"The Subcontractor [Burns, d/b/a Climate Control Company] shall comply with all provisions of the Contract documents, specifications and drawings, insofar as they apply to work described in Paragraph "B" below." [Paragraph "B" described in some detail the work incident to completing the installation of the heating and air conditioning in the Greene County Homes]

The contract documents referred to, as shown by the contract between the State of Tennessee and the prime contractor, Trammell Construction Company, included the "Rules and Regulations and Interpretations of the Prevailing Wage Scale Law, Chapter 168, Public Acts 1953". These regulations set out the provisions of the Prevailing Wage Act and then spell out in detail the duties of the contracting agencies of the State of Tennessee, of the contractors and all sub-contractors, and the duties of the State Department of Labor.

Regulation I provides that the contracting agency of the State of Tennessee must secure from the Department of Labor a wage determination setting forth the prevailing wage rates to be paid all classes of workmen that may be required to perform work on the facility being constructed, and must include the wage determination in the contract. The regulations then require that the contractors and sub-contractors would "classify all laborers and mechanics conformable with schedule of classifications in the contract" and would pay hourly rates which were not less than those listed for the class of labor being employed.

In order to determine if the contractor or sub-contractor is fully complying with the regulations, the employer is required (Regulation II) to submit weekly a certified copy of all payrolls to the contracting agency, affirming "that the payrolls were correct, and complete, that the wage rates contained therein are not less than those determined by the Commissioner of Labor, *and that the classifications set forth for each laborer and mechanic conform with the work he performs.*" (emphasis supplied).

The State Department of Labor is directed to ''check the weekly payrolls submitted by contractors and subcontractors together with conditions at the job site in order *to determine that workmen have been properly classified in accordance with the work performed by them''*. (Regulation III, emphasis supplied).

█ We think it is apparent from the regulations set out above that the parties contemplated that Burns would classify his own employees, but in doing so, he would be limited to a classification based on the work actually performed by each employee.

Plaintiff's assignments III through VI are directed to the Court's finding that plaintiff's employees, though classified as laborers, actually performed sheetmetal work. The record reveals that none of the employees in question were journeymen sheetmetal workers, but all had had training and experience in the field, except one who was a refrigeration mechanic by trade. This training and experience was a prime requisite for employment as shown by the fact that the plaintiff, as a condition of employment, required each of the employees to furnish all the tools necessary to the sheetmetal trade. After employment, these men were assigned to work on the Greene County Homes project along with Ralph Bays, a journeyman sheetmetal worker who was to be the working foreman.

Plaintiff had the duct work required for the heating and airconditioning systems prefabricated in his shop in Bristol, Tennessee. No complaint has been made by either the state or plaintiff's employees concerning the wage scale paid in the shop. After fabrication was completed, the metal was delivered to the job site by truck

or trailer. The employees in question unloaded the pre-fabricated material, and laid it out on the floor of the attic of the building so that the assembly could begin.

After having laid out the material in accordance with the plans and specifications, the employees were organized into teams of two men each to assemble and hang the duct work and install the exhaust systems. The process followed in assembling a duct was demonstrated to the trial court, and, while we have only the finished product and the word explanation, we are of the opinion, as was the trial judge, that it required skill to use the described tools of the sheetmetal trade to assemble the prefabricated metal. After assembling the duct, the workmen had to install it according to the plans and specifications. To do this, the workmen had to measure and cut the duct in order to secure a proper fit. The workman also had to measure, cut and install the hangars to support the ducts. This work was done with little or no supervision, as the foreman was also a member of a two-man team which was doing the same work as the other employees, and the finished installations were accepted without reservation by the State job inspectors.

A number of expert witnesses testified as to what constituted sheetmetal work and what work was or could be done by laborers. A fair consensus of this testimony is that when a workman uses the tools of the sheetmetal trade, with little or no supervision, and assembles and hangs duct work, he is performing the work of a sheetmetal worker.

In his argument that the employees were correctly classified as laborers, the plaintiff relies heavily upon the fact that the employees performed manual labor in

the unloading of the trucks, in carrying the prefabricated ducts to the place where they were to be installed, and in holding the ducts in place while they were being fastened. Admittedly this is so, however, we are of the opinion that such work does not require a classification of the employees as common laborers. Every trade, including that of sheetmetal workers, has to do manual labor when it is incidental to the performance of their primary duties. In this instance, it was necessary that the employees perform such labor in order to get the material to the place where it was to be installed. In this vein, it is interesting to note that Ralph Bays, the working foreman assigned to the job by plaintiff, also performed the same work as the employees in question although he was classified as a sheetmetal worker.

█ In conclusion, we think the evidence in this record supports the finding of the trial judge that the named employees of the plaintiff performed sheetmetal work and should be properly classified and paid as sheetmetal workers. Certainly, we cannot say that the evidence preponderates against the trial judge's finding. T.C.A. sec. 27-303.

The judgment of the trial court is affirmed. Costs incident to the appeal will be adjudged against the plaintiff and his surety.

McAmis, P. J., and Avery, (P. J., W. S.), concur.