**UNION PLANTERS NATIONAL BANK, Plaintiff–Appellant,**

v.

**AMERICAN HOME ASSURANCE COMPANY, Defendant– Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

July 1, 1993.

Application for Permission to Appeal Denied by Supreme Court Oct. 4, 1993.

John J. Mulrooney, Wolff Ardis, Memphis, for plaintiff-appellant.

Richard Glassman, John Barry Burgess, Glassman, Jeter, Edwards & Wade, Memphis, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff, Union Planters National Bank (hereinafter Plaintiff or UPNB), appeals from the order of the trial court granting summary judgment to defendant, American Home Assurance Company (hereinafter Defendant or American Home). Plaintiff sued Defendant for sums allegedly due under a breach of warranty endorsement to an insurance policy issued by Defendant. Although the parties filed a detailed stipulation of facts in the trial court, we will limit our statement of the facts to those necessary for consideration of the issues involved.

On February 27, 1980, Owen C. Bell borrowed the purchase price of an airplane from UPNB. The indebtedness was evidenced by a promissory note guaranteed by Bell's wife and secured by an Aircraft Security Agreement on the airplane which was duly perfected by UPNB. Pursuant to the terms of the security agreement, Bell provided insurance on the airplane for the benefit of UPNB. Bell subsequently leased the airplane to Scenic Airlines, Inc., and the lease agreement required Scenic to assume the obligation to keep the airplane insured with a policy of insurance which included a loss payable clause for the benefit of UPNB, a breach of warranty endorsement for the benefit of UPNB and a provision providing for not less than 30 days written notice to UPNB prior to cancellation of the policy.

American Home issued an aircraft hull and liability insurance policy to Scenic as the named insured for a policy period of September 1, 1980, to September 1, 1981. The policy included a breach of warranty endorsement which the parties concede is the same as a standard mortgage clause as used in more conventional forms of insurance such as fire insurance policies. The breach of warranty endorsement provides in pertinent part:

BREACH OF WARRANTY ENDORSEMENT

In consideration of an additional premium . . . it is understood and agreed that loss, if any, under any Physical Damage coverage provided by this Policy, shall be payable to the Named Insured, and [Union Planters National Bank] (hereinafter called the Lienholder) as interest may appear.

1. As to the interest of the said Lien holder only, the insurance afforded by any Physical Damage Coverage of this Policy shall not be invalidated by any act or neglect of the Named Insured nor by any change in the title of ownership of the aircraft but conversion, embezzlement or secretion by or at the direction of the Named Insured is not covered hereunder; provided however that:

(a) in case the Named Insured shall neglect to pay any premium due under this Policy the Lienholder shall, on demand, pay the premium; and

(b) the Lienholder shall notify the Company of any change of title or ownership of the aircraft or apparent increase of hazard, which shall come to the knowledge of the Lienholder, and, unless permitted by this Policy, it shall be endorsed thereon and the Lienholder shall, on demand, pay the premium for such increased hazard.

2. The liability of the Company to any Lienholder under the provisions of Paragraph 1 of this endorsement shall not exceed:

(a) the unpaid balance due on liens pertaining to the aircraft less unearned interest and unpaid installments more than 10 days overdue on the date of loss or damage; nor

(b). the amount of lien recited in Paragraph 6 of this endorsement, which would have remained unpaid at the time of the loss or damage had all payments been made when not more than 10 days overdue; nor

(c) the Insured Value of the aircraft as stated in this Policy, whichever is less, however, no payment shall be made until after the mortgagee has exhausted all reasonable means of collecting the amount due.

\*    \*    \*    \*    \*    \*

5. In the event this Policy or this endorsement is cancelled by the Company thirty (30) days prior notice shall be sent to the said Lienholder named herein.

\* \* \* \* \* \*

Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions, or agreements of the Policy other than as above stated.

\* \* \* \* \* \*

American Home's aircraft hull and liability insurance policy to which the breach of warranty endorsement was attached provides in pertinent part:

## INSURING AGREEMENTS

\* \* \* \* \* \*

III. Physical Damage (Hull) Coverages

Coverage F—All Risk Basis. To pay for any physical damage loss to the aircraft, including disappearance of the aircraft.

Coverage G—All Risk Basis Not in Flight. To pay for any physical damage loss to the aircraft sustained while the aircraft is not in flight and which is not the result of fire or explosion following crash or collision while the aircraft was in flight.

Coverage H—All Risk Basis Not in Motion. To pay for any physical damage loss to the aircraft sustained while the aircraft is not in motion under its own power or momentum and which is not the result of fire or explosion following crash or collision while the aircraft was in motion under its own power or momentum.

\* \* \* \* \* \*

Coverages F, G and H

(Total Liability)

With respect to total loss, the Company will pay the insured value of the aircraft, as stated in the Declarations, subject to any applicable deductible.

With respect to partial loss, the Company will pay, subject to any applicable deductible, as hereinafter provided:

(1) if repairs are made by other than the Named Insured, the cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime), plus the cost of the least expensive, reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer;

(2) if repairs are made by the Named Insured, the total of the following:

(a) actual cost to the Insured of material of like kind and quality

(b) actual wages paid for labor, excluding any overtime

(c) 100% of item (b) in lieu of overhead and supervisory services

(d) cost of the least expensive, reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer.

The amount due under this Policy with respect to partial loss shall in no event exceed the amount due were the loss payable as a total loss. In any event, when the amount paid or payable hereunder is equal to the amount payable as a total loss, any salvage value remaining shall inure to the benefit of the Company. Equipment installed in the aircraft subsequent to the effective date of coverage shall be considered a part of the aircraft, and the salvage value thereof shall inure to the benefit of the Company. There shall, however, be no abandonment of any damaged property without the consent of the Company.

If the loss is due to theft, the Company shall have the right to return the stolen property at any time prior to actual payment of the claim hereunder, with payment for any physical damage sustained thereto.

\* \* \* \* \* \*

### DEFINITIONS

\* \* \* \* \* \*

"Physical Damage" means direct and accidental physical loss of or damage to the aircraft, hereinafter called loss, but does not include loss of use or any residual depreciation in value, if any, after repairs have been made.

\* \* ·\* \* \* \*

Scenic terminated the lease on November 14, 1980, and returned the airplane to Bell in Nashville, Tennessee. Bell accepted the aircraft as being in satisfactory condition with the original seats and the maintenance and repair log books included. UPNB was not notified of Scenic's termination of the lease and transfer of possession of the airplane.

Scenic also requested through its insurance agent that the airplane be deleted from the American Home policy effective November 15, 1980, but UPNB was not notified of this deletion prior to December 9, 1980.

On December 4, 1980, Bell leased the airplane to Robert B. O'Neal, Jr., and Tina—O. Film Enterprises, Inc., and O'Neal took possession of the airplane which included at that time the original seats and the log books. Five days later, the airplane was seized by the United States government in San Juan, Puerto Rico, while being used for drug trafficking by a third party to whom O'Neal had loaned the airplane. The original seats and log books were missing when the airplane was seized by the government.

Some time subsequent to the seizure, Bell stopped making payments on his indebtedness to UPNB. UPNB was not able to get in contact with Bell until March 27, 1981, and on that date Bell first learned that the airplane had been seized by the United States government. As a result of a petition filed by UPNB, the United States remitted the forfeiture and returned the airplane to UPNB and it was subsequently sold at auction for the highest bid price of $115,000.00. Subsequently, UPNB sued Bell and the guarantor for the deficiency and obtained a judgment on November 16, 1982, in the amount of $193,880.26 which UPNB attempted to collect from November, 1982, to March of 1988. The gross recovery from the guarantor was in excess of $102,000.00. UPNB claims property damage to the airplane which it computes as $135,000.00 which is a result of subtracting the actual value of $115,000.00 from the agreed value of the policy of $250,000.00. UPNB also adds expenses and seeks recovery of $142,571.00 plus interest.

Defendant filed a motion for partial summary judgment[1] which we quote:

Comes now the Defendant and files this Motion for Partial Summary Judgment and in support states:

1. Counsel for the Plaintiff, via his pleadings and in other manners, has indicated that one of the theories of the Plaintiff in this cause is that the mortgage debt was actually insured by the policy of insurance issued by the Defendant. The Defendant hereby moves for Partial Summary Judgment as to any theory directly or indirectly related to the mortgage debt of the Plaintiff being insured by the Policy of insurance issued by the Defendant.

2. In support of said Motion, the Defendant will rely upon all pleadings filed in the cause, all discovery taken, and all depositions filed.

The trial court granted full summary judgment to Defendant and dismissed Plaintiff's suit. The court found, as stated in its memorandum opinion:

\* \* \* \* \* \*

1. The law of Tennessee governs the insurance contracts in this case;

---

1. Plaintiff also filed a motion for partial summary judgment, but presents no issues concerning that motion in this appeal.

2. The Breach of Warranty Endorsement is a standard mortgage clause which protects the interest of the lienholder against any acts or neglect of the named insured;

3. The terms, conditions and exclusions in the main policy may act to supplement and complete the terms of the mortgagees' contract (BOW), in so far as the terms of the main policy are not adverse to the Bow endorsement, and do not involve acts of neglect of the named insured.

4. Physical damage coverage as provided by the Bow Endorsement and as defined in the main policy refer to direct and accidental physical loss.

5. The plaintiff, Union Planters, has not claimed a direct or accidental physical loss.

6. Exclusions in the main policy relating to seizure of the airplane act to bar Union Planters' recovery.

UPNB has appealed and presents two issues for review. The first issue as stated in Plaintiff's brief is whether the trial court erred in holding that UPNB did not claim or offer proof of direct or accidental damage to the airplane.

■ This is an appeal from the order of the trial court granting summary judgment to Defendant. Defendant's motion, however, was for a partial summary judgment only as to Plaintiff's claim that the mortgage debt was insured by the policy of insurance. In the case at bar, Plaintiff's complaint alleged physical damage to the aircraft by virtue of the lost seats and log book, but apparently Plaintiff did not put on any proof as to the extent of this loss other than the balance due on its debt after allowing all just credits.

Defendant's limited motion did not operate to shift the burden to Plaintiff to set forth the specific facts proving the value of the physical damage to the aircraft. *See Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993). Plaintiff has stated a claim for recovery of physical damage to the aircraft and the record, as it exists at the present time, does not require Plaintiff to come forward with evidence to prove the amount of that claim.

■ The second issue, as stated in Plaintiff's brief, is whether American Home's obligation on the standard mortgage clause, after termination of Scenic's insurable interest and cancellation of Scenic's coverage on the airplane under the main policy, is to UPNB for the amount of its insured lien up to the agreed value of the airplane and not to Scenic for a property damage loss.

Basically, UPNB asserts that the insurer's obligation under a standard mortgage clause, after cancellation of the main policy as to the named insured, is to the lienholder for the amount of the debt. We must respectfully disagree with this assertion.

■■ The parties concede that under the law in this state, a standard mortgage clause establishes a separate contract of insurance between the mortgagee and the insurer which controls over contrary provisions in the policy. *Third Nat. Co. v. Thompson,* 28 Tenn.App. 436, 191 S.W.2d 190 (1945). In *Laurenzi v. Atlas Ins. Co.,* 131 Tenn. 644, 176 S.W. 1022 (1915), the Supreme Court noted:

> [T]hat the contract evidenced by the rider is a separate and distinct one with the mortgagee, designed for his protection, and in operation from the date of its execution; that, in so far as the policy or contract with the mortgagor is in harmony therewith, *it is to be referred to, to supplement and complete the terms of the mortgagee's contract,* and, in so far as the policy is out of harmony with the rider, such adverse provisions are to be disregarded; and, further, that under such a contract the security of the mortgagee cannot be invalidated, either in whole or in part, by any act or neglect of the mortgagor, either prior or subsequent to the execution of such contract with the mortgagee. (Emphasis added).

131 Tenn. at 655, 176 S.W. 1022.

In 10A Couch on Insurance 2d (Rev. ed.) § 42.731, it is stated:

**Limitations upon concept of independent contract between mortgagee and insurer.**

The rule that the standard loss clause creates a separate contract between the mortgagee and the insurer cannot be literally applied, to the exclusion of other provisions of the policy, for *without those other provisions there would be no definition of the terms of the insurance, such as the property covered, the amount, and so on.* Rather the standard mortgagee clause creates an independent contract of insurance for the mortgagee's separate benefit, engrafted upon the main contract of insurance contained in the policy itself, which is rendered certain and understood by reference to the policy which makes it complete. (Emphasis added).

\* \* \* \* \* \*

Obviously, any claim of UPNB against American Home must arise from a contract and the contract between the parties in this instance is the breach of warranty endorsement, which provisions must control. The Court stated in *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.App.1992):

The interpretation of a written agreement is a matter of law and not of fact. *APAC–Tennessee, Inc. v. J.M. Humphries Const. Co.*, 732 S.W.2d 601 (Tenn.App. 1986). Therefore, our scope of review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. *See Adams v. Dean Roofing Co.*, 715 S.W.2d 341 (Tenn.App.1986).

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). A primary objective in the construction of a contract is to discover the intention of the parties from a consideration of the whole contract. *McKay v. Louisville & N.R. Co.*, 133 Tenn. 590, 182 S.W. 874 (1916); *Burns v. Temperature Control Co.*, 52 Tenn.App. 51, 371 S.W.2d 804 (1962). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning, *Taylor v. White Stores, Inc.*, 707 S.W.2d 514 (Tenn.App.1985), and neither party is to be favored in the construction. *Ballard v. North American Life Ins. Co.*, 667 S.W.2d 79 (Tenn.App. 1983).

The court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955); *Sutton v. First Nat'l Bank of Crossville*, 620 S.W.2d 526 (Tenn. App.1981). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. *Bank of Commerce & Trust Co. v. Northwestern Nat'l Life Ins. Co.*, 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380 (1930).

*Id.* 836 S.W.2d at 118–119.

In the case at bar, the breach of warranty endorsement specifically provides for loss "under any Physical Damage coverage provided by this Policy." In addition, the endorsement explicitly provides for "insurance afforded by any Physical Damage Coverage of this Policy." There is no other coverage provided in the breach of warranty endorsement. The endorsement is clear and unambiguous that recovery for physical damage to the insured property is controlled by the provisions of the policy of insurance itself. Paragraph 2 of the breach of warranty endorsement is merely a limiting paragraph and nothing more.

The subject of the insurance is the property insured and obviously the purpose of the mortgage clause is to protect the subject of the insurance as security for the mortgagee's debt. The lien of the mortgagee does not establish the debt but is merely security for the debt and is solely the subject of the insurance.

Accordingly, the order of the trial court is modified to grant summary judgment to De-

fendant to the extent of its motion for partial summary judgment only. The order of the trial court in all other respects is vacated. Costs of the appeal are assessed one-half to Plaintiff and one-half to Defendant and the case is remanded to the trial court for such further proceedings as may be necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.