IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

November 23, 1998

Cecil Crowson, Jr.
Appellate Court
Clerk

JAMES M. BEAM and JOYCE A. BEAM,      ) Knox Chancery
Individually and as Next              ) C.A. No. 03A01-9802-CH-00055
of Kin of      KAREN H. BEAM, Deceased, )
and Next Friend of LANCE B. BEAM,     )
A Minor,                              )
                                      )
                                      )
          Plaintiffs-Appellees        )
                                      )
                                      ) HON. FREDERICK D. MCDONALD
vs.                                   ) CHANCELLOR
                                      )
                                      )
UNITED SERVICES AUTOMOBILE            )
ASSOCIATION, and/or USAA CASUALTY     )
INSURANCE COMPANY, and/or USAA        )
GENERAL INDEMNITY COMPANY,            )
                                      )
                                      ) AFFIRMED IN PART,
          Defendants-Appellants       ) REVERSED IN PART AND
                                      ) REMANDED


FRANCIS A. CAIN and BEVERLY DEAN NELMS, Frantz, McConnell, & Seymour, LLP, Knoxville, for Appellants.


MARK E. FLOYD, Pryor, Flynn, Priest & Harber, Knoxville, for Appellees.



O P I N I O N


                                                          McMurray, J.


        This appeal involves the determination of whether there is insurance coverage on three

separate insurance policies — two automobile policies and a personal umbrella policy.  The

plaintiffs, James and Joyce Beam, had purchased insurance coverage from the defendant, United

Services Automobile Association (USAA).  The plaintiffs, whose daughter was killed in an

automobile accident, filed a declaratory action against USAA seeking a judgment as to whether uninsured motorist (UM) coverage was included under their personal umbrella policy and whether USAA had acted in "bad faith" by denying coverage. In its answer, USAA denied that the plaintiffs could recover under both automobile policies and under their personal umbrella policy. With court approval, the plaintiffs amended their complaint to allege that the two automobile policies could be "stacked," thereby allowing them a greater recovery.

Each party filed a motion for partial summary judgment on the issue of "stacking" the UM coverage. The trial court granted partial summary judgment in favor of the Beams on the issue of stacking. One month later, the second issue, regarding umbrella UM coverage, was heard by the trial court without a jury. Again, the trial court ruled in favor of the Beams, holding that they did have UM coverage under their personal umbrella policy at the time of the accident. USAA now appeals. We affirm the judgment of the trial court as to the automobile policies and reverse the judgment of the trial court as to the umbrella policy.

USAA presents two issues for our consideration:

1. Whether the trial court erred in failing to grant summary judgment to it on the issue of "stacked" uninsured/underinsured motorist coverage; and

2. Whether the trial court erred in finding UM coverage under the Beams' personal umbrella policy even though James Beam signed a form rejecting UM coverage.

The Beams had three insurance policies with USAA at the time of the accident. First, the Tennessee automobile policy, number 00122 83 80U 7105 0, provided for UM coverage bodily limits of $300,000 per person and $500,000 per accident. This policy insured three vehicles: a 1989 Volvo, a 1989 Pontiac, and a 1996 Chevrolet Camaro. Second, the Pennsylvania automobile policy,

2

number 00122 83 80U 7104 0, provided for UM and underinsured motorist bodily injury limits of $300,000 per person and $500,000 per accident, as well as providing for "stacked" coverage. The Pennsylvania automobile policy insured one vehicle, a 1979 Volvo, that was garaged in Pennsylvania. Mr. Beam, an airline pilot, used that vehicle in Pennsylvania whenever he flew there. Third, the Tennessee umbrella policy, number 00122 83 80 70U, provided for up to $5 million in coverage.

In 1993, the Beams moved from Pittsburgh, Pennsylvania, to Knoxville, Tennessee. In early March 1994, after the Beams' move to Knoxville, USAA sent the Beams a UM rejection form for their personal umbrella policy. This rejection form was sent approximately two months before the time for the renewal of the policy. On March 21, 1994, a USAA service representative spoke by telephone to Mrs. Beam and told her that the Tennessee umbrella UM rejection form had been mailed. Mrs. Beam indicated that she would discuss the matter with her husband.

On April 4, 1994, approximately one month after the umbrella UM rejection form was mailed to James Beam, USAA had not received a response from the Beams. Therefore, under Tennessee law, the umbrella policy was renewed to include UM coverage. On April 5, 1994, James Beam called USAA to inquire about the UM coverage under his umbrella policy and about the premium for the coverage. According to the computer documentation prepared by the USAA service representative at the time of the conversation, Mr. Beam indicated that he would probably return the umbrella UM rejection form: "He said he will probably return form — I said I will hold transaction until renewal — If form recd — no action — If not, will add UM 5 million to umb renewal."

Mr. Beam signed the rejection form for UM coverage under his personal umbrella policy on April 1, 1994. Although the umbrella policy, including the UM coverage, had already been renewed, the policy was amended to exclude the umbrella UM coverage once USAA received the UM

3

rejection form, and the Beams received a credit of $144.90 to their account for the umbrella UM coverage.

In January 1996, Mr. Beam purchased a 1996 Camaro for his daughter Karen who turned sixteen the following month and added this car to his existing Tennessee automobile insurance policy through USAA. In February 1996, Karen Beam turned sixteen, and she too was added to the Beams' Tennessee automobile policy. On September 9, 1996, Karen Beam was driving the Camaro when it was struck by a vehicle driven by Karen Pappas. Karen Beam was killed, and Lance Beam, a passenger in the Camaro, was injured.

The Beams filed a negligence action against Karen Pappas. Ms. Pappas had bodily injury limits of $25,000 per person and $50,000 per accident under her liability insurance policy with Horace Mann Insurance Company. Although Horace Mann indicated to the Beams that it would pay its full policy limits of $50,000 to them, they contend that the coverages under Pappas' insurance and the UM coverages on their two automobile policies will not compensate them for all the damages as a result of the accident. Therefore, they seek to collect under the UM provision of their umbrella policy.

We address first the issue of whether the UM coverage provided by the Pennsylvania automobile policy can be "stacked" onto the UM coverage provided by the Tennessee automobile policy, thereby allowing the Beams a greater recovery. USAA contends that the legislative intent of the UM statute in Tennessee is that stacking of coverages is not permitted.

> Minimum policy limits not increased. — Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be

4

afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55-12-107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in § 55-12-107. Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance, and other benefits.

Tenn. Code Ann. § 56-7-1205 (1994).

Moreover, USAA argues that our Supreme Court and this Court have interpreted this statute to mean that the stacking or duplication of automobile insurance coverages is not permitted in Tennessee, citing State Automobile Mutual Ins. Co. v. Cummings, 519 S.W.2d 773 (Tenn. 1975) and Jones v. Mulkey, 620 S.W.2d 498 (Tenn. App. 1981).

The Beams argue that the Pennsylvania automobile policy provides "stacked" UM coverage on its face, and thus, they are entitled to recover under the UM provisions of the Tennessee policy as well as the Pennsylvania policy. The plaintiffs assert that Tennessee Code Annotated § 56-7-1205 "does not prohibit an insurance company from expressly providing broader coverage than may be required." Specifically, they point to the Pennsylvania automobile policy which provides for stacked coverages. The Beams argue that following the accident USAA notified them in writing that the coverage under the Pennsylvania automobile policy could be "stacked" onto the UM coverage under the Tennessee automobile policy.

As USAA notes in its brief, the trial court in making its decision regarding the stacking of coverages relies on a stipulation between the parties that an additional amount in the Beams' premium was charged for stacked coverage under the Pennsylvania automobile policy. However, at trial it was discovered that because the Beams had only one vehicle covered under the Pennsylvania automobile policy, they had not been charged an additional amount in their premium

5

for stacked coverage. USAA asserts that whether there was a premium differential is irrelevant because under Tennessee law, the stacking of insurance coverages is not permissible.

In our analysis of this issue, we will first look to the Tennessee UM statute and the case law that interprets that statute. First, Tennessee Code Annotated § 56-7-1205 indicates on its face an intent to guarantee coverage only within certain limits. In interpreting this statute, our Supreme Court in Cummings noted that the UM statute "evinces a legislative purpose to provide recovery only up to the minimum statutory limit." Cummings, 519 S.W.2d at 775. Like the Supreme Court in Cummings, this Court in Jones v. Mulkey, 620 S.W.2d 498 (Tenn. App. 1981), felt bound by the statute in its ruling that stacking of coverages is not permissible. We too are bound by the statute in this cases involving policies issued in Tennessee and subject to interpretation under Tennessee Law.[1] We are not required to apply Tennessee Law, however, to a policy issued in Pennsylvania and subject to interpretation under the laws of Pennsylvania. We are at liberty to apply Pennsylvania law unless it is in conflict with the public policy of this state. In Pennsylvania, "stacking" is permitted and it is expressly provided in the Pennsylvania policy that the coverage may be stacked. As we have previously noted, the public policy in this state as established by the legislature "evinces a legislative purpose to provide recovery only up to the minimum statutory limit." This is not to say, however, that public policy prohibits parties from contracting for insurance in excess of the minimum statutory limit. It appears that our public policy is directed toward a duplication of benefits or a "double recovery." See T.C.A. § 56-7-1205. Hence, since there is quite obviously no room for a "double recovery" under the facts and circumstances of this case, it is not in conflict with out public policy to enforce the provisions of the Pennsylvania insurance policy which allow stacking. "All through the legal history of our State the courts have had not only the power but are

---

[1] T.C.A. § 56-7-1201, by its own terms, applies only to policies delivered, issued for delivery or renewed in this state ... .

6

constantly enforcing rights of actions arising under the laws of another state which require the ascertainment and application of the law of the foreign state, and this we have done even when the law of the foreign state be different from our own. The only exception being where the law of the foreign state be against the public policy of our State. See Whitlow v. N.C. & St. L. Ry. Co., 114 Tenn. 344, 357, 84 S.W. 618, 68 L.R.A. 503 (1904)." Zurick v. Inman, 221 Tenn. 393, 426 S.W.2d 767 (Tenn. 1968).

Under Pennsylvania law, stacking is expressly permitted. Pennsylvania's Motor Vehicle Financial Responsibility law provides as follows:

§1738. Stacking of Uninsured and Underinsured Benefits and Option to Waive.

(a)     Limit For Each Vehicle — When more than one (1) vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured. (Emphasis added).

Further, the courts of Pennsylvania have expressly approved stacking of coverage to the limits of coverage or to the extent of the insured's damages, whichever is less. See Harleysville Mut. Cas. Co. v. Blumling, 241 A.2d 112 (Pa. 1968).

We, therefore, find no error in the trial court's judgment allowing stacking of the Pennsylvania policy and the Tennessee automobile policy.

We turn now to the issue of whether the Beams had UM coverage under their personal umbrella policy. USAA contends that James Beam rejected UM coverage on his umbrella policy on April 1, 1994. It further asserts that once UM coverage has been rejected by an insured, such

7

coverage cannot be added until the insurer is notified in writing of the desire to add the coverage. USAA argues that Mr. Beam never requested that UM coverage be added to his personal umbrella policy after having rejected the coverage. Therefore, USAA maintains that when the Beams' daughter was killed on September 9, 1996, the Beams did not have UM coverage under their personal umbrella policy because Mr. Beam had rejected such coverage in April 1994.

In support of its argument, USAA relies on the following provision of the Tennessee UM statute:

> However, any named insured may reject in writing such uninsured motorist coverage completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55-12-107. Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies, and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto. Unless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal,
> reinstatement, or replacement of such policy, or the transfer of vehicles insured thereunder, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, that whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction, the provisions of this section shall apply in the same manner as when a new policy is being issued.

Tenn. Code Ann. § 56-7-1201(a)(2) (Supp. 1997).

USAA contends that "[t]he umbrella policy was maintained from 1986 through the time of the accident under policy number 00122 83 80 70U and was simply renewed year after year." It further argues that after Mr. Beam signed the UM rejection form in 1994, no new application for umbrella insurance was ever submitted. Also, it notes that the Beams received an adjustment of $144.90 on their billing statement when Mr. Beam rejected UM coverage.

The Beams argue that the addition of the 1996 Camaro in January 1996 and the addition of Karen Beam in February 1996 to their existing insurance coverage with USAA were "applications" for coverage. Their argument rests on the last sentence in Tennessee Code Annotated § 56-7-1201(a)(2): "whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction, the provisions of this section shall apply in the same manner as when a new policy is being issued." Therefore, they contend that because they had not specifically rejected UM coverage on their personal umbrella policy regarding these two "applications," UM coverage would have been automatic under Tennessee law, and consequently, UM coverage would have been in effect at the time of the accident.

In addition, the Beams assert that they never received any notification from USAA that UM coverage had been removed from their umbrella policy. The Beams note that the umbrella policy that became effective on May 3, 1994, a month after Mr. Beam had rejected UM coverage, stated on the declaration page that UM coverage was included. They maintain that in the two years after Mr. Beam rejected umbrella UM coverage, he never received any indication that he no longer had UM coverage.

In its ruling, the trial court commented on two provisions of the umbrella UM rejection form. The court noted the statement "[p]lease complete the rejection order form on the reverse and return it within the next ten days." The court observed that "on the reverse there's various choices to be checked off and the final statement again stating that if you do not sign and return this rejection form within ten days, uninsured motorist will be added to your policy and you'll be charged accordingly." The trial court concluded that in "[r]eading all the documents, there is no indication in the renewal that we can see that would alert an ordinary person that something needed to be done to include uninsured motorist coverage."

9

USAA argues that the trial court failed to construe the policy as a whole. Specifically, USAA notes that the form also states "[i]f this is a new policy, please return this form with your application. If it is a renewal, return this only if you desire a change, or have not previously signed a rejection form, within the next ten days." USAA maintains that the rejection form "specifically addresses a renewal and without ambiguity clearly instructs the insured to return the form if a change is desired with respect to previously rejected coverage."

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. See Hurley v. Tennessee Framers Mut. Ins. Co., 922 S.W.2d 887 (Tenn. App. 1995). Insurance contracts are to be construed in such a way "as to give effect to the intention and express language of the parties." Blaylock & Brown Constr., Inc. v. AIU Ins. Co.,796 S.W.2d 146, 149 (Tenn. App. 1990). To determine whether there was a renewal of an existing policy or whether a new policy was issued, one should look to the intent of the contracting parties as evidenced by the policy itself. Lewis v. Western Assur. Co., 175 Tenn. 37, 130 S.W.2d 982 (1939). The intention of the parties should be determined from the construction of the insurance contract as a whole. Burns v. Temperature Control Co., 52 Tenn. App. 51, 371 S.W.2d 804 (1962). The words expressing the parties' intentions should be given their usual, natural and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514 (Tenn. App. 1985).

In our discussion of the personal umbrella policy in this case, we note that it is undisputed that on April 1, 1994 Mr. Beam signed a form rejecting umbrella UM coverage. The Beams, who had had a personal umbrella policy with USAA since 1986, had never had UM coverage under their umbrella policy. However, the Beams argue that their addition of the 1996 Camaro and their daughter to their existing insurance coverage with USAA constituted "applications" for insurance

10

under Tennessee Code Annotated § 56-7-1201(a)(2), and as such, provided UM coverage automatically under Tennessee law.

To determine whether there was a new policy or a renewal, we must look at the language in the policy as evidence of the parties' intentions. The statement "RENEWAL OF Policy Number USAA 00122 83 80 7OU" appears at the top of the personal umbrella policy declarations page. Also, on the lower part of the page is the following statement: "Form and Endorsement(s) made part of this policy at time of issue: REMAIN IN EFFECT (REFER TO PREVIOUS POLICY):" At the bottom of the same page is the statement, "ATTACH THIS DECLARATION TO PREVIOUS POLICY" in capital letters and bold type. Clearly, the policy language indicates a renewal and not an application for coverage.

In addition, Tennessee's UM statute clearly provides the procedure for adding UM coverage once it has been rejected:

> Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies, and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto. Unless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of such policy, or the transfer of vehicles insured thereunder, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer.

Tenn. Code Ann. § 56-7-1201(a)(2).

The record reveals that the Beams were well aware of the situation regarding UM coverage under their umbrella policy. First, USAA sent Mr. Beam a letter dated March 2, 1994 in which USAA explained the procedure for rejecting UM coverage in Tennessee. Second, Mr. Beam and

11

Mrs. Beam both discussed umbrella UM coverage with a USAA service representative. A representative spoke with Mrs. Beam on March 21, 1994 regarding the rejection form that was mailed to the Beams. Mrs. Beam indicated to the representative that she would discuss the matter with her husband. On April 4, 1994, USAA had not received a response from the Beams regarding the umbrella UM rejection form, so UM coverage was included, as explained in the letter sent to Mr. Beam. On April 5, 1994, Mr. Beam called USAA to discuss the rejection form and the premium for UM coverage on the umbrella policy. According to the computer documentation entered by the USAA service representative at the time of the conversation, Mr. Beam indicated that he would probably return the rejection form, thereby rejecting UM coverage on the umbrella policy. Lastly, Mr. Beam signed the UM rejection form on April 1, 1994 and sent the form to USAA. USAA posted a credit of $144.90 for the umbrella UM coverage on May 3, 1994.

Mr. Beam argues that USAA did not tell him that UM coverage was not included under his personal umbrella policy and that he was uninformed regarding his insurance coverages. We find this argument unpersuasive in light of the fact that Mr. Beam signed the UM rejection form himself and in light of all the communication between USAA and the Beams concerning this matter. Mr. Beam testified that the signature on the UM rejection form appeared to be his, although he could not remember signing the form. Moreover, the record reflects that Mr. Beam, an airline pilot, is not a neophyte regarding insurance matters. The computer documentation of telephone conversations between USAA and Mr. Beam indicates that he frequently inquired about insurance premiums, deductible limits, and other aspects of his insurance coverage. The USAA computer documentation also reveals that Mr. Beam inquired about insurance coverage regarding his daughter's boyfriend's use of one of the family's vehicles, his daughter's move from a learner's permit to driver's license, and other similar details regarding insurance coverage for his family. Consequently, we cannot accept Mr. Beam's argument that he was uninformed or unsophisticated regarding matters of

12

insurance.  Mr. Beam signed the rejection form, so he knew or should have known what he was doing by that act.  In the final analysis, we conclude that there was no UM coverage under the umbrella policy.

Assuming, however, for the purposes of discussion and for no other reason, that the umbrella policy does provide UM coverage, unquestionably it is a policy issued under Tennessee law and is a "policy delivered, issued for delivery or renewed in this state."  Therefore, it is subject to application of Tennessee law.  As hereinbefore noted, Tennessee law prohibits the stacking of UM coverage.  See Cummings, supra., and T.C.A. § 56-7-1205.

Accordingly, we reverse the judgment of the trial court and find that UM coverage was not available to the Beams under their umbrella policy.[2]

We do not believe that the record supports a finding that USAA acted in "bad faith" by denying coverage.

We affirm the judgment of the trial court allowing a stacking of the Pennsylvania policy with the Tennessee Policy.  We reverse the judgment of the trial court that there was UM coverage under the umbrella policy and that the umbrella policy coverage could be stacked with the other policies.  This case is remanded to the trial court for such further action as may be necessary.  Costs of the appeal are assessed equally between the parties.

_____
Don T. McMurray, Judge

---

[2]T.C.A. § 56-7-1201 (a)(3) was amended effective July 1, 1996 to provided that uninsured or underinsured motorist coverage need not be provided in this state by an excess or umbrella policy of insurance.

13

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Herschel P. Franks, Judge

14

IN THE COURT OF APPEALS
AT KNOXVILLE

JAMES M. BEAM and JOYCE A. BEAM, ) Knox Chancery
Individually and as Next ) C.A. No. 03A01-9802-CH-00055
of Kin of KAREN H. BEAM, Deceased, )
and Next Friend of LANCE B. BEAM, )
A Minor, )
 )
  Plaintiffs-Appellees )
 )
 ) HON. FREDERICK D. MCDONALD
vs. ) CHANCELLOR
 )
 )
UNITED SERVICES AUTOMOBILE )
ASSOCIATION, and/or USAA CASUALTY )
INSURANCE COMPANY, and/or USAA )
GENERAL INDEMNITY COMPANY, )
 ) AFFIRMED IN PART,
  Defendants-Appellants ) REVERSED IN PART AND
 ) REMANDED

## JUDGMENT

This appeal came on to be heard upon the record from the Chancery Court of Knox County,

briefs and argument of counsel.  Upon consideration thereof, this Court is of opinion that there was

error in the trial court.

We affirm the judgment of the trial court allowing a stacking of the Pennsylvania policy with

the Tennessee Policy.  We reverse the judgment of the trial court that there was UM coverage under

the umbrella policy and that the umbrella policy coverage could be stacked with the other policies.

This case is remanded to the trial court for such further action as may be necessary.  Costs of the

appeal are assessed equally between the parties.

PER CURIAM