IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 20, 2007 Session

# LINUS THORNTON v. JAMES A. MASSEY, ET AL.

**Direct Appeal from the Circuit Court for Hardin County**
**No. 3891     C. Creed McGinley, Judge**

---

**No. W2006-01417-COA-R3-CV - Filed May 17, 2007**

---

This lawsuit concerns Plaintiff's claim under the parties' lease agreement for a percentage of the sale price generated by the auction sale of Defendant's real property, and Defendant's counter-claim for payments due on promissory notes. The trial court entered judgment in favor of Plaintiff on both the lease claim and counter-claim. We affirm in part, vacate in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Vacated in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Dennis W. Plunk, Savannah, Tennessee, and Mary Stewart Nelson, Pelham, Alabama, for the appellant, James A. Massey.

Charles C. Drennon, III, Memphis, Tennessee, for the appellee, Linus Thornton.

## OPINION

The parties to this lawsuit, Plaintiff/Counter-Defendant Linus Thornton (Mr. Thornton) and Defendant/Counter-Plaintiff James Massey (Mr. Massey) had a multifaceted relationship which began in 1991. This relationship included loans made by Mr. Massey to Mr. Thornton and secured by promissory notes in 1995, 1997, and 1998; a joint cattle business, Grandview Pacific Cattle Company ("GPCC"), in which Mr. Massey sold his interest to Mr. Thornton and a third partner; and consulting services provided by Mr. Thornton to Mr. Massey. In 1998, the parties also entered into a lease of real property known as Grandview Farm ("the farm"), an income-producing recreational farm owned by Mr. Massey in Hardin County. The lease provided, *inter alia*, that, it was for a term of one year and that it would "automatically renew for one year terms until canceled in writing at least 60 days prior to the original term or any renewal term[.]" Also in October 1998, the parties entered into a memorandum of agreement which provided that, upon anticipated sale of the farm, Mr. Thornton was entitled to "a minimum of ten [percent] (10%) of the net closing proceeds from

the sale of the [f]arm no matter what the sale price is, provided that the [l]ease is in effect and that Thornton shall not be in default thereunder. Payment shall be made at time of closing."

In October 2004, Mr. Thornton filed a complaint against Mr. Massey in the Hardin County Circuit Court seeking a declaratory judgment, injunctive relief, lien lis pendens, and damages. In his complaint, Mr. Thornton alleged that the farm had been "sold at auction on June 26, 2004 to multiple purchasers" and that "each such purchaser had entered into a binding [s]ales [c]ontract" with Mr. Massey. He further alleged that the lease was in effect at the time of auction, and that he was entitled to judgment under the lease.

Mr. Massey answered and counter-claimed in December 2004. In his answer, Mr. Massey asserted that he had exercised his right to terminate the lease due to default by Mr. Thornton, that the lease was not in effect at the time of the auction, and that no sales contracts had been closed. In his counter-claim, Mr. Massey alleged Mr. Thornton had failed to pay promissory notes executed in 1995, 1997, and 1998. Mr. Massey also asserted, "[t]he Grandview Farm, consisting of approximately [o]ne [t]housand [s]ix [h]undred [f]orty [t]hree (1,643) acres . . . was sold at auction on June 26, 2004 to multiple purchasers and each of such purchasers entered into a binding [s]ales [c]ontract . . . These [s]ales [c]ontracts had no contingencies except defects in title." He alleged that Mr. Thornton had tortiously interfered with these contracts by filing his action seeking a temporary restraining order and lis pendens. Mr. Massey sought payment on the promissory notes, plus interest, attorney's fees, and costs of collection. Mr. Massey also sought compensatory and punitive damages arising from tortious interference with contract in the amount of $1,000,000.

Mr. Thornton answered and asserted that Mr. Massey's counter-complaint with respect to the promissory notes was barred by the statute of limitations, estoppel, release, waiver, and accord and satisfaction. He also denied any tortious interference with the sales contracts, and denied allegations of default under the lease.

The matter was heard by the trial court on December 21, 2005. The trial court found the lease agreement was in effect when the auction sale of the farm occurred in June 2004, and that Mr. Thornton was entitled to judgment under the lease. The court further found that "[Mr.] Massey's defense that the auctioneering company was unlicensed has no effect on this case," and that Mr. Massey had ratified his intent to sell by letter to the winning bidders. Accordingly, the trial court awarded Mr. Thornton judgment in the amount of $136,583.12, which represents ten percent of the total bid amount at the auction sale of the farm, plus post-judgment interest under the terms of the lease. The trial court found claims on two of the promissory notes had been dismissed, and denied recovery by Mr. Massey under the third promissory note based in part on the statute of limitations, in part on laches, and in part on "estoppel by lawsuit." The trial court further found that Mr. Massey's remaining claims had been voluntarily dismissed. (Vol 3 at 34) Mr. Massey filed a timely notice of appeal to this Court. We affirm in part, vacate in part, and remand.

### Issues Presented

Mr. Massey presents the following issues, as stated in the Statement of the Issues included in his brief, for our review:

(1)     Whether Thornton's award was improper because the land sale contracts are invalid, or in the alternative, because the determination of the sale's validity is premature, since the auction company did not have a license to conduct auctions in Tennessee.

(2)     Whether the award to Thornton was improper because Thornton was not entitled to the award under the terms of the lease.

(3)     Whether Massey is entitled to recovery on the Thornton notes because they are not barred by the statute of limitations.

### Standard of Review

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### Analysis

We first address whether, under the 1998 lease, Mr. Thornton is entitled to a percentage of sales generated by the June 2004 auction sale of the farm. Mr. Massey asserts the trial court erred in determining Mr. Thornton was entitled to recover under the terms of the lease because the lease was not in effect at the time of the June 2004 auction. He contends that the lease must be interpreted along with a memorandum of agreement executed by the parties contemporaneously with the lease, and that, in accordance with this memorandum, the lease was for a period not to exceed five years.

A lease agreement is construed as a contract. *See Cain P'ship Ltd. v. Pioneer Inv. Servs. Co.*, 914 S.W.2d 452, 462 (Tenn. 1996). The interpretation of a contract is a matter of law which we review *de novo* on the record with no presumption of correctness for the determination of the trial court. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l*

*Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions. *Id.* at n. 5. The court must seek to ascertain the parties' intent in light of the context of the entire agreement. *Burns v. Temperature Control Co.*, 371 S.W.2d 804, 806 (Tenn. Ct. App. 1963)(citations omitted). Where an executed agreement makes reference to other documents and incorporates them or their conditions as part of the agreement, those documents will be interpreted together with the executed agreement to determine the intent of the parties. *Id.* (citations omitted).

The lease entered into by the parties on October 1, 1998, began on that day and terminated on October 1, 1999. Paragraph One of the lease provided: "It shall automatically renew for one year terms until canceled in writing at least 60 days prior to the original term or any renewal term in the manner of giving notice as herein contained." Paragraph 10 provided for notice my United States mail. Paragraph 11 provided:

> This instrument embodies the entire agreement between the parties. It incorporates all verbal promises and representations. It cannot be modified or changed except in writing on an instrument executed in the same manner as the execution hereof.

The memorandum of agreement contained in the record states in the preamble: "Massey has leased to Thornton the Farm by separate lease agreement of even date ("Lease") for a period not to exceed five (5) years." The memorandum reiterates some of the lease provisions and recites an execution date of October 1, 1998. However, the memorandum of agreement is not, in fact, part of the lease agreement *per se.* Rather, the primary purpose of the memorandum is to memorialize the parties' intent expressed by paragraph one of the memorandum: to turn the farm "into a 1st class farming, ranching and recreational operation, with the intent to sell the Farm within 5 years for its highest and best price." It is this memorandum, and not the lease, which sets out Mr. Thornton's entitlement to proceeds from any sale. The lease, on the other hand, more fully sets out Mr. Thornton's obligations to maintain the property and is, by its terms, renewable for one year terms unless canceled in writing no more than sixty days prior to renewal.

Further, reading the lease and memorandum together, we do not find that the phrase "for a period not to exceed five (5) years" limited the term of the lease to five years where it was contained not in a numbered provision but in the introductory preamble, and where the limitation is not found in the lease. Further, the memorandum clearly expresses the parties' intent to sell the farm within five years. The memorandum does not, however, expire at the end of five years. Additionally, there is nothing in the memorandum limiting Mr. Thornton's right to a percentage of sale proceeds should the sale not occur as anticipated within five years. The memorandum contains two limitations on Mr. Thornton's right to a percentage of sale proceeds. First, the memorandum provides that the lease must be in effect. Second, it provides that Mr. Thornton must not be in default under the lease.

We agree with Mr. Massey that the two documents, read together, reflect the full agreement of the parties. Read together, they provide the terms under which Mr. Thornton was to live on and maintain the farm, and the parties' agreement with respect to a percentage to be received by Mr.

Thornton upon anticipated sale of the farm. The trial court found that the conduct of the parties indicated that the lease automatically renewed each year and that it was in effect at the time of the June 2004 auction. The court also found that Mr. Massey did not notify Mr. Thornton of alleged breaches of the lease until after Mr. Thornton sought compensation following the auction. Upon review of the record, we cannot say the evidence preponderates against the trial court's findings with respect to the parties' conduct and Mr. Massey's failure to notify Mr. Thornton of alleged breaches or termination of the lease.

We are not insensitive o Mr. Massey's assertion that he did not take action to inspect the property until 2004, and therefore did not discover until that time that Mr. Thornton had not maintained it as agreed, because he was under treatment for cancer. However, there is nothing in the record to otherwise indicate that the parties intended a five-year limitation on Mr. Thornton's right to a percentage of sale proceeds when the lease and memorandum were executed. Additionally, we must construe any ambiguity in a written contract against the drafter. *E.g., Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991). Mr. Massey does not dispute that he is the drafter of these documents. Accordingly, insofar as the limiting phrase contained in the memorandum creates ambiguity in light of the lease and the remainder of the memorandum, we must construe any ambiguity in Mr. Thornton's favor.

Mr. Massey additionally asserts that the award to Mr. Thornton was improper under the lease because, according to the terms of the lease, the award was to be a portion of the net closing proceeds of a sale. He submits that, because there were no closings, "there are no monies from which an award . . . can be extracted." Mr. Thornton, on the other hand, contends that Mr. Massey "elected to engage in a course of conduct to ensure that none of the closings under the [s]ales [c]ontracts would ever take place so as to never pay Thornton[.]" The trial court stated at the hearing of this matter: "it's obvious to the [c]ourt that, first of all, if there were any problems in the sale, that essentially it was ratified in letters to each of these purchasers after this lawsuit was filed and that there was further ratification concerning the sale, that he intended to sell . . . ."

It is undisputed that the farm was auctioned in parcels in June 2004; that the auction was conducted by the Redfield Group, which held itself out to be qualified and licensed; that all parcels sold; that the total bid amount was $1,365,831.25; and that Mr. Thornton won the bid for two parcels. The parties also do not dispute that the memorandum of agreement provides for payment of "ten [percent] of the net closing proceeds" and that "[p]ayment shall be made at the time of closing," or that the sales did not, in fact, close. Finally, it is undisputed that in July 2004 the Redfield Group was sued in the chancery court by unsuccessful bidders and that, during the course of the action in chancery court, it was discovered that the Redfield Group was not licensed to conduct the auction in Tennessee. Apparently, the chancery court issued an injunction enjoining the sale of at least some of the auctioned parcels.

The trial court made no findings regarding whether, as Mr. Thornton asserts, the failure to close was due to intentional action on Mr. Massey's part. Mr. Massey, on the other hand, contends the temporary restraining order sought and received by Mr. Thornton at the outset of this lawsuit,

in addition to the injunction issued by the chancery court, cast a cloud on the title such that closing was impracticable or impossible. Additionally, although the injunction allegedly issued by chancery court was alluded to at trial, the record does not reflect that the matter was resolved in the trial court, and the testimony at trial was that the actions in chancery court had not been resolved when the current matter was heard in December 2005.

Although the trial court found that the unlicensed status of the Redfield Group did not impact Mr. Massey's decision not to go forward with the sale, we are not satisfied that the action initiated by the unsuccessful bidders against the Redfield Group, and the restraining order apparently issued in that action enjoining the sales, did not prevent the closing of the auction sale or cast a cloud on the title such that closing was impracticable. Thus, we cannot say that Mr. Massey has purposefully avoided closing in order to circumvent or nullify the memorandum agreement at issue here. We are compelled to remand this matter to the trial court, therefore, for further findings with respect to this issue.

We next turn to Mr. Massey's issue regarding whether the trial court erred in determining that the statute of limitations barred enforcement of the promissory notes. The promissory notes at issue were executed in December 1995, March 1997, and November 1998. The 1995 note was in the amount of $21,500 plus 8% interest per annum, due in three equal installments with the first installment due December 10, 1997. The 1997 note was in the amount of $5,000 plus 8% interest per annum, due in three equal installments on May 31, 1997, August 31, 1997, and December 31, 1997. The 1998 note was in the amount of $62,262 plus 8% interest per annum, payable in 36 monthly installments beginning February 1998. Mr. Massey filed his counter-claim in December 2004. Mr. Thornton submits that Mr. Massey's action was filed beyond the six-year limitations period provided by Tennessee Code Annotated § 28-3-109(a)(3).[1] Mr. Massey asserts, however, that his action is not barred by the statute of limitations where Mr. Thornton reaffirmed his promise to pay on the notes within the six-year period. He further asserts, in the alternative, that if Mr. Thornton did not ratify his promise to pay on the notes, his cause of action on installments due within the six-year limitation period did not accrue until those installments become due. Mr. Massey contends he is entitled to judgment on all installments on the notes that became due on or after December 10, 1998, plus 8% interest per annum.

The trial court's order states:

---

[1]The Code provides:

(a) The following actions shall be commenced within six (6) years after the cause of action accrued:
    (1) Actions for the use and occupation of land and for rent;
    (2) Actions against the sureties of guardians, executors and administrators, sheriffs, clerks, and other public officers, for nonfeasance, misfeasance, and malfeasance in office; and
    (3) Actions on contracts not otherwise expressly provided for.

Tennessee Code Annotated § 28-3-109(a)(3)(2000).

The Court holds that the claims on two of the promissory notes have been dismissed, and that a claim on the third promissory note is barred, in part by statute of limitations and in part by laches and estoppel by lawsuit.

Even if we were to agree with Mr. Massey's argument regarding the application of the statute of limitations, Mr. Massey fails to raise the trial court's finding of dismissal, laches and estoppel in the Statement of the Issues section of his brief to this Court. We may consider an issue waived where it is argued in the brief but not designated as an issue. *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App.2002). Accordingly, we decline to address the issue of whether, assuming Mr. Massey's assertion that at least some payments due under the promissory notes are not barred by the statute of limitations, the trial court erred by dismissing the claim based on laches and estoppel. We therefore affirm the trial court's judgment on this issue.

### *Holding*

In light of the foregoing, we affirm the trial court's finding that the terms of the lease/memorandum of agreement were in effect at the time the farm was auctioned in June 2004. We vacate the judgment in the amount $136,583.12 in favor of Mr. Thornton, however, and remand for further findings regarding whether the failure to close on sales of the auctioned farm parcels resulted from a purposeful act of Mr. Massey, or whether closing was impossible or impracticable in light of the pending litigation in chancery court regarding the propriety of the auction. The trial court's judgment in favor of Mr. Thornton on Mr. Massey's counter-claim is affirmed. Costs of this appeal are taxed one-half to the Appellee, Linus Thornton, and one-half to the Appellant, James A. Massey, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE