IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**JAMES HARTWELL KENSINGER,**

    Appellant,

Vs.

**JENNIFER KENSINGER "CONLEE,"**

    Appellee.

Shelby Circuit No. 141706
C.A. No. 02A01-9811-CV-00322

**FILED**

**July 30, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE JAMES F. RUSSELL, JUDGE


Wanda B. Shea; Lisa E. Circeo of Memphis
For Appellant

Charles W. McGee; Monroe, Kaufman & McGhee of Memphis
For Appellee


*REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:


**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**


**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

    This case concerns the interpretation of a divorce decree and a marital dissolution agreement incorporated therein. Petitioner-Appellant, James Hartwell Kensinger (Husband), appeals the order of the trial court that construed the child support provision of the marital

dissolution agreement (MDA) to terminate only upon the death of Respondent-Appellee, Jennifer Kensinger Conlee (Wife).

After seventeen years of marriage, the parties were divorced on grounds of irreconcilable differences by final decree entered on June 16, 1993. This was the fourth marriage for Wife and the second for Husband. The final decree of divorce incorporated a marital dissolution agreement that provided, *inter alia*, that the parties would have joint custody and control of their minor children, Ariel Graham Kensinger (D.O.B. - 9/16/80) and James Campbell Kensinger (D.O.B. - 3/2/83), with Wife to be the primary custodial control parent. The parties also agreed in the MDA that Wife would receive the parties' residence and that Husband would pay one million dollars to Wife as alimony *in solido*. The MDA further provided in pertinent part:

> 8. Husband does agree that in order to provide for his children's support and maintenance, he shall pay Thirty-Six Thousand Twenty Dollars ($36,020.00) per year as child support in increments of Three Thousand One and 67/100 Dollars ($3,001.67) starting June 15, 1993 and continuing the fifteenth (15th) day of each month thereafter until both children reach the age of eighteen and/or graduate from high school, the latter of which occurs. Husband shall continue to pay to Wife the Thirty-Six Thousand Twenty Dollars ($36,020.00) amount even if one or both minor children live permanently with Husband and the child support portion shall be proportionately classified as alimony in futuro. Said payments are to be funded by insurance proceeds under Section 16[1] in the event Husband predeceases both children attaining majority age and will not terminate upon the remarriage of Wife, or death or remarriage of Husband. Said payments will terminate upon the death of Wife.

> 9. Husband does agree that in order to provide for his Wife's support and maintenance, he shall pay Fifty-One Thousand Seventy-Seven Dollars ($51,077.00) per year in alimony in futuro, paid in monthly installments of Four Thousand Two Hundred Fifty-Six and 42/100 Dollars ($4,256.42), beginning on the 15th day of June, 1993. Husband shall pay the Four Thousand Two Hundred Fifty-Six and 42/100 Dollars ($4,256.42) monthly amount through December 15, 2001, at which time the Husband will pay to Wife for her support and maintenance the sum of Three Thousand ($3,000.00) per month in alimony in

---

[1] Section 16 of the MDA provides:

> 16. Husband agrees to maintain at least $288,000.00 of life insurance on his own life, until the parties' minor children either attain the age of eighteen years or graduate with their high school class, whichever occurs later. Husband further agrees to establish as beneficiary of said policies a Trust for said minor children of the parties and Husband agrees to submit to Wife verification of insurance coverage and beneficiary designation on an annual basis.

2

futuro starting January 15, 2002. Said payments are to be funded by insurance proceeds under Section 13[2] in the event Husband predeceases his obligation to pay alimony through December 15, 2001 and will not terminate upon the remarriage of Wife, or death or remarriage of Husband. Said payments will terminate upon the death of Wife.

On February 20, 1998, a "Consent Order Changing Custody" was entered by the trial court changing custody of the parties' two minor children from Wife to Husband. As a result of the change in custody, Husband, on March 25, 1998, filed a "Petition to Modify Final Decree of Divorce to Terminate Child Support." The petition seeks a termination of his child support obligation due to a substantial and material change of circumstances in that he was awarded custody of the parties' minor children. He avers that even though the child support payments are now characterized as alimony *in futuro* pursuant to paragraph eight of the MDA, such payments are really child support and should be terminated due to the change in custody. Husband also seeks an award of attorney's fees and suit expenses. Wife's answer to the petition denies that there has been a change of circumstances to warrant termination of the alimony *in futuro* award set forth in paragraph eight of the MDA, denies that Husband should be awarded attorney's fees and expenses, and requests that she be awarded attorney's fees and expenses.

On August 13, 1998, after a hearing, the trial court entered an order titled, "Order on Petition for Modification of Final Decree, For Determination of Alimony *In Futuro* Payments and Setting Child Support:"

> This cause came on to be heard on Petition of the Petitioner, James Hartwell Kensinger, for Modficiation of Final Decree, for Determination of Alimony In Futuro Payments and Setting Child Support, and the Court, after hearing argument of counsel, testimony of the parties and their witnesses, the Court finds as follows:
>
> 1. That paragraph 8 of the Marital Dissolution Agreement is clear and unambiguous. The Court is without power to change the contractual agreement between the parties. The Court further finds that there has not been a substantial and material change of circumstance to modify Petitioner's obligation to pay alimony *in futuro*.

---

[2] Section 13 of the MDA provides:

> 13. Husband agrees to name Wife as beneficiary of Three Hundred Seventy-Seven Thousand Dollars ($377,000.00) of life insurance on Husband's life to ensure payment of alimony in solido and alimony in futuro through January 1, 2003. Husband shall remain as the owner of the policies.

2. The Court further finds that the Petitioner's obligation to pay alimony *in futuro* pursuant to paragraph 8 of the Marital Dissolution Agreement continues until the death of Respondent, Jennifer Conlee.

3. The Court further finds that Respondent shall pay child support for the parties' two (2) minor children pursuant to the Guidelines, in the amount of $1,637.00 per month.

4. The Court hereby makes said child support payments retroactive to the filing of the Petition on March 25, 1998. That Respondent's obligation to pay child support for the month of March shall be prorated for the month of March.

5. The Court finds that neither party has breached the Agreement and hereby orders that each party is responsible for their own attorney's fees, and that court costs are divided one-half to each party.

Husband filed a "Motion to Alter or Amend Judgment and for Reconsideration of Ruling." Husband's motion asserts that the language in paragraph eight of the MDA is ambiguous, and the trial court should have considered the witness's testimony which established that the transformed alimony *in futuro* obligation would terminate when the youngest child reached majority, not upon the death of Wife. Wife filed a response to Husband's motion and a "Counter Motion to Alter or Amend" in which she requested, *inter alia*, the trial court to find, upon reconsideration of its attorney's fees award, that Husband breached the terms of the MDA in attempting to avoid his obligations. She seeks an award of attorney's fees pursuant to paragraph twenty-four of the MDA which provides for attorney's fees and expenses due to a breach of the MDA by the other party. Alternatively, Wife requested that she be awarded attorney's fees pursuant to T.C.A. § 36-5-101.

On October 14, 1998, the trial court entered an order denying Husband's motion to alter or amend. This appeal ensued, and Husband presents the following issues for review as stated in his brief:

1. Whether or not the Trial Court erred in holding that the language in paragraph eight of the Marital Dissolution Agreement was not ambiguous.

2. Whether or not the Trial Court erred in excluding parol evidence offered to interpret paragraph eight of the Marital Dissolution Agreement.

3. Whether or not the Trial Court erred in holding that Husband's alimony obligation pursuant to paragraph eight of the Marital Dissolution Agreement was alimony *in futuro* which did not terminate until the death of Wife.

4. Whether or not the Trial Court erred in failing to award Husband a reasonable attorneys' fee.

4

The issues presented for review deal with the trial court's construction of the MDA. No issue is presented regarding the trial court's denial of the motion for termination of alimony *in futuro* payments. Although the pleadings in the trial court do not present any issue concerning the interpretation of paragraph eight of the MDA with regard to the duration of payments to Wife, the parties tried this issue by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they have been raised in the pleadings." Tenn.R.Civ.P. 15.02. In effect, the parties tried a declaratory judgment suit construing the MDA.

We consider Husband's first three issues together, and, the ultimate issue is whether the trial court's interpretation of the MDA is correct. The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. App. 1993). If, however, the contract contains ambiguity which necessitates looking to extrinsic evidence to determine the intention of the parties, then the court's factual findings are presumed correct unless the evidence preponderates otherwise. T.R.A.P. 13(d); *APAC-Tennessee, Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. App. 1986); *Southern Ry. Employees Credit Union v. Thornburg*, 680 S.W.2d 791, 792 (Tenn. App. 1984).

Husband asserts that the trial court erred in finding paragraph eight of the MDA to be unambiguous, in failing to consider parol evidence to interpret paragraph eight, and in holding that his alimony *in futuro* obligation in paragraph eight continued until Wife's death. He submits that the language in paragraph eight is ambiguous in that it is prone to at least two different interpretations - that the alimony *in futuro* obligation in paragraph eight will terminate upon the youngest child reaching majority or that such will terminate upon Wife's death. As such, Husband asserts that the trial court erred in excluding parol evidence. Husband further submits that the weight of evidence established that the parties intended that the alimony *in futuro* obligation in paragraph eight would terminate when Husband's child support obligation would terminate - upon the parties' youngest child reaching majority.

Wife, on the other hand, asserts that the trial court correctly found the MDA to be unambiguous and that such a finding prevents the use of parol evidence to interpret the terms of

5

the MDA. She contends that paragraph eight unequivocally transforms Husband's child support obligation into alimony *in futuro* if one or more of the parties' children resides with him, which both children eventually did. Wife also contends that there is no ambiguity in paragraph eight that the alimony *in futuro* obligation terminates upon her death especially given the fact that such termination language immediately follows the language that created the alimony *in futuro* obligation. She further submits that even though the trial court ultimately found the MDA to be unambiguous, Husband has not been prejudiced by the court's ruling because the court allowed Husband to put forth evidence, including parol evidence, and, after hearing such testimony, the court rendered its ruling that there was no ambiguity.

A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'" *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990) (quoting *Mathews v. Mathews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)). However, upon incorporation into a divorce decree, the agreement loses its contractual nature and becomes a judgment of the court, except that an agreement "on matters outside the scope of the legal duty of child support during minority, or alimony *in futuro* over which the court has continuing statutory power to modify, retains its contractual nature, although included in the decree of the court, and is enforceable in the same manner as other contracts." *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). *See also Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Gaines v. Gaines*, 599 S.W.2d 561, 565 (Tenn. App. 1980).

The rules of construction normally applicable to written instruments also apply to judgments and orders. *Hale v. Hale*, 838 S.W.2d 206, 208 (Tenn. App. 1992); *Branch v. Branch*, 35 Tenn. App. 552, 555-56, 249 S.W.2d 581, 582-83 (1952). A divorce decree which incorporates a marital dissolution agreement is to be construed like other written instruments, with the court seeking to determine the apparent purposes in the minds of the draftsmen and the trial court. *See Livingston v. Livingston*, 58 Tenn. App. 271, 429 S.W.2d 452, 456 (1967).

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties

6

from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. *Union Planters Nat'l Bank,* 865 S.W.2d at 912. The court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Id*. In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990).

The general rules of evidence regarding the admission of parol evidence and the construction of written instruments also apply to such decrees. *Livingston*, 58 Tenn. App. 271, 429 S.W.2d 452. As with other instruments, parol evidence is inadmissible to vary, alter, or contradict such a decree where the decree is complete, unambiguous, and valid, or where there is no fraud, accident or mistake, or claim or allegation thereof with respect to the agreement incorporated in the instrument. *Id.* at 457. As with the interpretation and construction of contracts, however, the court may admit evidence which will enable the court to place itself in the situation of the parties at the time they entered into the marital dissolution agreement which the decree incorporates. *Barzizza v. Barzizza*, No. 02A01-9110CV00246, 1992 WL 139862, at *4 (Tenn. App. June 23, 1992) (citing *Nashville Life Ins. Co. v. Mathews*, 76 Tenn. 499 (1881)).

The fact the parties' disagree over the interpretation of a particular contract provision does not create an ambiguity. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. App. 1994). "'A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists.'" *Id.* (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)).

Guided by the above-stated rules, we agree with the trial court that paragraph eight of the

MDA is unambiguous. We disagree, however, with the trial court's interpretation of these provisions. The MDA purports to settle the parties' property matters and establish the legal liability with regard to alimony and child support. Paragraph eight of the agreement is specifically directed to Husband's obligation to provide support for the two minor children. Paragraph eight states: ". . .that in order to provide for his children's support and maintenance, [Husband] shall pay Thirty-Six Thousand Twenty Dollars ($36,020.00) per year as child support in increments of Three Thousand One and 67/100 Dollars ($3,001.67) starting June 15, 1993 and continuing the fifteenth (15th) day of each month thereafter *until* both children reach the age of eighteen and/or graduate from high school, the latter of which occurs." (Emphasis supplied). This quoted sentence establishes Husband's obligation for payments of child support for the period of time stated. The agreement then continues to provide that "Husband shall continue to pay to Wife *the* Thirty-Six Thousand Twenty Dollars ($36,020.00) amount even if one or both minor children live permanently with Husband and the child support portion shall be proportionately classified as alimony in futuro." (Emphasis supplied). Thus, by this language, Husband has agreed that *the* child support obligation established in the first sentence of paragraph eight will be paid to Wife. *The* child support obligation amount is the amount described in the first sentence which is to continue until the youngest child reaches majority. Moreover, paragraph eight continues by stating that "*[s]aid payments* are to be funded by insurance proceeds under Section 16." (Emphasis supplied). The agreement refers to said payments which must mean the payments described in the first sentence. The very description of these payments in the first sentence of paragraph eight is that said payments terminate when both children reach majority and/or graduate from high school. Finally, the last provision provides: "*Said payments* will terminate upon the death of Wife." (Emphasis supplied). As we have previously stated, "said payments" refers to the payments that automatically terminate when both children reach majority and/or graduate from high school. We find it clear that the reference "will terminate upon the death of Wife" simply means that the termination upon this event is limited to the period of when the payments are required to be made under the terms of paragraph eight.

The insurance provisions of paragraph sixteen of the MDA lends support for our interpretation. Section 16 provides:

> 16.  Husband agrees to maintain at least $288,000.00 of life insurance on his own life, until the parties' minor children either attain the age of eighteen years or graduate with their high school class, whichever occurs later. Husband further agrees to establish as beneficiary of said policies a Trust for said minor children of the parties and Husband agrees to submit to Wife verification of insurance coverage and beneficiary designation on an annual basis.

The amount of insurance provided for in Section 16 equals the amount of child support that would be due from the time the MDA was entered into until the parties' youngest child would attain majority, and it is evident that the protection concerning Husband's life provided by the insurance was limited to the time that he was obligated to make payments under paragraph eight.

We find that based upon the language of the MDA, giving the words their usual, natural, and ordinary meaning, that Husband is obligated only to make the payments in paragraph eight "until both children reach the age of eighteen and/or graduate from high school."

Although this Court and the trial court have found the MDA to be unambiguous, we have reached different conclusions as to the meaning of paragraph eight. As noted, this does not necessarily mean that the contract is ambiguous. *See Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.,* 884 S.W.2d 458 (Tenn. App. 1994). However, there may be disagreement with our finding that the contract is unambiguous, and for this reason we should examine the proof introduced at trial but later excluded by the trial court.[3]

---

[3]    During the hearing on the matter, an objection based upon the parol evidence rule was raised by Wife's counsel to Husband's counsel's intention to call the attorney who drafted the MDA and the accountant who was consulted for tax purposes in connection with the drafting of the MDA. In response, the trial court stated:

> Of course, at this point I've heard nothing, but let me say that, based upon my own review of the document in its entirety, there appears to be enough of an ambiguity with regard to those paragraphs taken in the full context and four corners of the total agreement that the testimony, at least at this point, would not be precluded by the Parol Evidence Rule; therefore, the Court will overrule that objection.

After hearing testimony from the parties and their witnesses, the trial court then concluded, with regard to whether the MDA was ambiguous, as follows:

> First of all, in reading and rereading and rereading that language, the Court finds it, on the surface, to be clear on its face. It only becomes ambiguous when you consider the testimony of all the witnesses who have testified.
>
> *          *          *

9

The attorney who represented both parties and who drafted the MDA testified that the intended meaning of paragraph eight of the MDA was that the child support obligation was to be paid to Wife in the form of child support or alimony *in futuro*, depending on where the children resided, as long as one of the children was a minor. He also testified that paragraph nine, rather than paragraph eight, was intended to provide Wife support for her life and that there was never any discussion that the support provided for in paragraph eight was to be provided for such duration. As for the last sentence in paragraph eight, the attorney stated that the intention of that language was that if Wife died prior to the children reaching majority, then the alimony *in futuro* would terminate. He further testified that "there was never any doubt that this was money that was going to be paid until the kids got out of high school and reached the age of 18, Paragraph 9 is what [Wife] was going to live on for the rest of her life." The accountant's testimony reiterated that of the attorney with regard as to when the obligation in paragraph eight terminated. He further explained that the amount of life insurance coverage in paragraph sixteen of the MDA, which is referred to in paragraph eight, was calculated by multiplying the amount of the obligation in paragraph eight by the number of years remaining until the parties' youngest child reached majority. Husband's testimony at trial echoed that of the attorney's and the accountant's.

Wife, on the other hand, testified that the obligation in paragraph eight was intended to be provided to her until she died if at any point the children decided to live with Husband. She further testified that even if the children continued to reside with her, the obligation in paragraph eight was to be paid to her for the rest of her life.

Based upon the testimony, the evidence preponderates in favor of a finding that the intention of the parties was for the obligation in paragraph eight to terminate when the parties' youngest reached majority and/or graduated high school.

Finally, both parties contend that the trial court erred in not awarding them attorney's fees. The award of attorney's fees is within the sound discretion of the trial court, and unless the

---

The court is of the considered opinion that the language is clear and unequivocal. The transformation of the obligation is contractual in nature. The parties agreed to it. They both are *sui juris* as we say in the law. They knew what they were doing at the time, and they knew what the impact might be.

evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. App. 1988). From a review of the record, we find that the evidence does not preponderate against the trial court's decision regarding attorney's fees.

Accordingly, the order of the trial court holding that the payments provided for in paragraph eight of the MDA are payable to Wife until her death is reversed. We hold that the payments to Wife pursuant to paragraph eight are payable to her until the youngest child reaches his/her majority and/or graduates from high school, or, if Wife dies before the occurrence of such events, said payments terminate upon Wife's death. The order of the trial court in all other respects is affirmed. The case is remanded to the trial court for such further proceedings as are necessary. Costs of appeal are assessed one-half to appellant and one-half to appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**